## PETER A. LION *vs.* THE BALTIMORE CITY PASSENGER RAILWAY COMPANY.

*Sewers and Drains—Negligent Construction—Liability for Injury Caused by Overflow—Notice to Abate Nuisance.*

The construction of drains and a vault to carry off surface water in such an unskilful manner that the water overflows and injures the property of an adjoining owner renders the party making the drains liable for such injury without previous notice, and it makes no difference that the work had been done under the supervision of a competent engineer.

No notice or request to abate a nuisance is necessary before bringing suit against a party who originally created it.

A street railway company in constructing its cable conduits elevated the bed of a street bringing an increased quantity of water to a certain point, where it was concentrated in underground drains and a vault. Ordinary rainfalls caused the vault to overflow and the cellar of plaintiff's house, situated at that point, was flooded and the walls so damaged that the house was taken down. Plaintiff had purchased the house after the construction of the vault. In an action to recover damages. *Held,*

1st. That since the defendant had constructed the vault and drains in such an unskilful manner as to cause the water collected by it to overflow into plaintiff's cellar it was liable for the injury thereby caused; and the fact that defendant employed a competent engineer to superintend the work is no defence.

2nd. That it was not necessary for the plaintiff to give notice to the defendant of the injury caused by the drains before bringing suit.

Appeal from the Baltimore City Court (PHELPS, J.) At the trial the following prayers were offered by the plaintiff:

1st. If the jury shall find that the plaintiff owned the premises mentioned in the evidence on the southeast corner of Ensor street and Ashland avenue, and that the natural flow of the surface-water coming down the east side of Ensor street and both sides of Sterling street, and the west side of Aisquith street, was due south on said streets and sides of streets, respectively, by open gutters there placed, and that the defendant closed said gutters, and raised the bed of Ashland avenue for the purpose of constructing and operating a cable railroad thereon, and in the place of said gutters, and to carry off the waters aforesaid, constructed the underground drains and sewers and the vault mentioned in the evidence, bringing into said vault, adjacent to the plaintiff's property, waters which would otherwise have passed down Sterling street and Aisquith street, as well as waters which had heretofore always passed safely down the gutters of Ensor street ; and that by reason of the careless and unskilful way in which said drains and vault were planned or constructed, if the jury shall find them to have carelessly or unskilfully planned or constructed in fact, the vault became filled with surface-waters during seasons of ordinary rains, and the waters therefrom passed from the

drains or the vault through the intervening earth into the cellar of the plaintiff's house, and damaged the same, and that such inflowing of said water and such damage would not have occurred but for the closing of said gutters, the raising of the bed of Ashland avenue and the negligent manner in which said drains and vault were constructed, then their verdict should be for the plaintiff. (*Refused.*)

2d. If from the evidence the jury shall find that the plaintiff owned the premises mentioned in the evidence, and that the defendant closed the gutters and constructed the drains and vault mentioned in the first prayer, and after constructing the same failed to keep the same open, clear and water-tight, and allowed the outlet from said vault to become closed up or so closed by matter flowing into the same as to cause the water upon occasions of ordinary rains as might be usually expected to occur in that locality, to rise in said vault and drains, and to force its way therefrom and through intervening earth into the cellar of the plaintiff's house, to the damage of the plaintiff; and that but for the closing of said gutters and the negligence of the defendant in failing to keep said drains and vault clear, open and water-tight, said waters would not have come into the cellar of the plaintiff, then their verdict should be for the plaintiff. (*Refused.*)

The plaintiff's third prayer related to the measure of damages.

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd, Pearce and Schmucker, JJ.

*J. Southgate Lemmon* and *Robert W. Beach* (with whom was *C. Baker Clotworthy* on the brief), for the appellant.

1. Having obstructed the natural flow and having gathered the water into this vault, for its own purpose, the defendant was bound to provide proper means or drains for its escape without injury to the property of others, and its failure to do so was in itself negligence, for the conse-

quences of which the defendant was liable. *Phila., W. & B. R. Co.* v. *Davis,* 68 Md. 281; *Balto. Breweries Co.* v. *Ranstead,* 78 Md. 501; *B. & P. R. Co.* v. *Reany,* 42 Md. 117; *Gilluby* v. *City of Madison,* 63 Wis. 526; 2 *Dillon, Munic. Corporations,* secs. 1045, 1046, 1051, 1051*a*; 21 *L. R. A.* 593; *Lynch* v. *New York,* 76 N. Y. 60; *Hitchens Bros.* v. *Munic. of Frostburg,* 68 Md. 110.

2. There was, moreover, evidence of bad planning, bad construction and subsequent want of care with regard to these sewers which should have gone to the jury; and the first and second prayers of the plaintiff should have been granted, together with the third prayer, to which no objection was made below.

3. While in some cases municipal corporations have been held exempt from liability for bad planning, or from failure to repair, until notified of defects in the city sewers, the rule rests upon the theory that the city represents equally all its inhabitants, acts judiciously, and is not responsible for errors of judgment. This theory has never been extended to private corporations interfering with the public highway for its purposes, and has been restricted within proper limits of care and watchfulness even as to public authorities. *Todd* v. *Troy,* 61 N. Y. 509; *McCarthy* v. *Syracuse,* 44 N. Y. 197; 56 *N. H.* 299.

*Arthur W. Machen* and *William S. Bryan, J.,* for the appellee.

The drains of the defendant having been laid in 1892, long before the plaintiff bought his house, the plaintiff, when he subsequently bought the property, took it "subject to the inconvenience," and could not, of course, recover for any injury that had already been done to the property. The remedy for such injury manifestly enured to the owner of the property at the time of its commission, and did not pass to his grantee. The plaintiff having bought the property "subject to the inconvenience" could not recover for any injury worked by the *continuance* of the nuisance with-

out first giving notice to the railroad company. This was the point on which the Court below decided the case, and is covered by the decisions of this Court in *Pickett* v. *Condon*, 18 Md. 412.

In *Conhocton Stone Road* v. *Buffalo, &c., R. Co.*, 51 N. Y. 573, it was held: " In order to maintain an action for damages resulting from a nuisance upon defendant's land, where such nuisance was erected by a previous owner before the conveyance to defendant, it is necessary to show that before the commencement of the action he had notice or knowledge of the existence of a nuisance, but it is not necessary to prove a request to abate it." See also *Wood on Nuisance*, sec. 838 ; *Woodman* v. *Tufts*, 9 N. H. 88 ; *Noyes* v. *Stillman*, 24 Conn. 15; *Noyes* v. *Boston*, 98 Mass. 39.

The cardinal distinction between the case at bar and the cases of *Reaney v. R. R.*, 42 Md. 117, and *Baltimore Breweries Co.* v. *Ranstead*, 78 Md. 501, cited by the plaintiff below, was that in using the street for the purpose of a street railway, the defendant was using the street for an ordinary or natural use, and in those cases the street was being used for an extraordinary or unnatural use. This is the distinction laid down and approved in the famous English case of *Fletcher* v. *Rylands*, and approved by this Court in *Short* v. *Railway*, 50 Md. 82, and in *Ranstead's case*, 78 Md. 509.

The directors of the defendant could not themselves be professionally competent to pass upon the character of drains which should be used. The utmost they could do was to employ a competent engineer and in good faith follow the plans drawn by him. If they did this, they did all that was practicable under the circumstances. And when they have done this, it is impossible to say with any show of reason that they have not acted as men of ordinary care and prudence would have acted in their position, or in other words that they have been negligent.

Again, a question of engineering or the propriety of an engineering plan adopted by a municipality (or by a *quasi* public corporation like a street railway company, whose

plans must be approved by the public officials having charge of the streets) is not a fit question to submit to a jury.    It is a question to be determined by the *quasi* judicial discretion of the proper public officers.    *Johnston v. District of Columbia*, 118 U. S. 21; *Child* v. *Boston*, 4 Allen, 41; *Mills* v. *Brooklyn*, 32 N. Y. 489 ; 2 *Dillon on Munc. Corp.*, sec. 1046.

There is, taking all the plaintiff's evidence, no legally sufficient evidence to show that the defendant's drain or its receiver had any connection whatever with the flooding of the plaintiff's cellar.    It never caused the water to flow over the surface of the pavement and into the cellar ; the claim seems to be that the receiver must have leaked and allowed the water to flow *through the earth* and the *walls and foundations* of the cellar, and thus do the flooding. There was no proof or claim of any crack or leak in the receiver.    It is submitted that the hypothesis that the receiver in this manner caused the water to be in the defendant's cellar, is too remote and fanciful a conjecture to be submitted to a jury.    In the nature of things, it would be only through the wildest speculation and guess-work, that the jury could arrive at this conclusion.    But the plaintiff's witnesses, in addition to proving that the receiver was full of water whenever the cellar was flooded (and thus laying a foundation for arguing *post hoc, propter hoc*), also proved that on several occasions when the receiver was empty water came into the cellar, " oozing under the foundation wall."

McSherry, C. J., delivered the opinion of the Court.

Legislative permission was given to the Baltimore City Passenger Railway Company to use the cable system for the propulsion of its cars.    In constructing that system it became necessary for the company to build the cable conduit ·under open gutters wherever it intersected them. Ensor street and Ashland avenue intersect each other nearly at right angles.    In going from one to the other— that is to say, in going north along the former and curving

therefrom east into the latter—the open gutter formerly
along the east side of Ensor street, where it crossed Ash-
land avenue, had to be passed, and as it was impossible for
the conduit with its open slot to be built under the surface
gutter, the gutter was changed to a closed sewer and sunk
by the railway company under the conduit. To provide
for the water carried off by the surface-gutter a twenty-inch
drain-pipe was laid by the company some feet below the
grade or level of Ashland avenue, from a point north of the
northeast corner of Ensor street and Ashland avenue to a
point south of the southeast corner of the same street. At
this latter point there was a vault built, and the twenty-inch
pipe was made to discharge into it. At the north and
south ends of this twenty-inch pipe there were eight-inch
openings leading from the surface gutter ; and at the north-
east corner of the two streets there was laid under-ground
and running eastwardly, a fifteen-inch pipe connecting with
the twenty-inch pipe and conveying into it the surface-water
gathered from the north side of Ashland avenue. At the
southeast corner of these same streets there was another
fifteen-inch pipe laid conveying into the vault the surface-
water gathered from the south side of Ashland avenue and
from Sterling and Aisquith streets farther to the east.
Leading from the vault and running down Ensor to Madi-
son street was a fifteen-inch outlet pipe. Water which
formerly passed south across Ashland avenue and down
Sterling and Aisquith streets was carried west along Ash-
land avenue to this vault. The bed of Ashland avenue was
raised to accommodate the location of the conduit. It was
made the duty of the company to keep in repair and to re-
move obstructions from this vault and these underground
sewers or pipes. It will be noticed that all the water enter-
ing this vault from the two eight-inch openings and from
the two fifteen-inch pipes was designed to be discharged
through one fifteen-inch outlet, and that the volume of
water brought to the vault by these works of the company
was greater than had formerly passed the southeast corner

of the two streets—Ensor and Ashland—upon the sur-
face.   All this work was done by the railway company
under the direction of the City Commissioner.   In eighteen
hundred and ninety-six the appellant purchased a house at
the southeast corner of Ensor street and Ashland avenue in
the immediate vicinity of, or about twelve feet away from the
vault described above.   At the time he purchased the
house the cellar was dry and the walls were free from
cracks, although these drain-pipes had been laid and this
vault had been built for some four years.   Shortly after-
wards the vault overflowed and the cellar of the appellant's
house was flooded.   When the vault was cleaned out by
the railway company the water in the cellar receded.   This
overflowing and flooding occurred on subsequent occasions
and in every instance from an ordinary rainfall.   As a result
of these overflows the walls of the appellant's house were
so damaged and rendered so unsafe that the house was, by
direction of the building inspector, taken down.   The ap-
pellant then sued the railway company for the damage thus
sustained by him.   He alleged in his declaration that " by
reason of the careless, unskilful and negligent manner in
which said sewer was constructed, kept in repair and at-
tended to, water came into the cellar " of his house and
caused the injury just described.   These facts were shown
by the evidence and there was also testimony tending to
prove that the plan of this construction of the drain-pipes
and vault or receiver was bad ; and that the works, as built,
were insufficient to carry off, except by an overflow that
would flood the appellant's cellar, the amount of water
which might be expected to enter the vault or receiver in
seasons of ordinary rains.   At the conclusion of the testi-
mony the plaintiff presented three prayers and the defend-
ant thirteen.

   The Court rejected all of those offered by the plaintiff
and granted one at the instance of the defendant, where-
upon the defendant withdrew the others which it had pre-
sented.   The instruction granted is in these words :   " It

being an admitted fact that the defendant's drain was laid before the plaintiff owned the property in question, and there is no legally sufficient evidence that the plaintiff notified the defendant that the drain caused an injury to the same, and the verdict must be for the defendant." Under this imperative instruction the verdict was, of course, rendered for the defendant, and from the judgment entered thereon the plaintiff appealed.

There were several questions discussed in the argument at the bar, but the controlling ones are those raised by the instruction just transcribed and by the rejection of the prayers of the plaintiff. If the railway company elevated the bed of Ashland avenue and brought an increased volume of water to the corner of Ensor street and Ashland avenue, and then by the negligent and unskilful construction of or attention to the sewers, or drains and vault, designed to carry off the water, failed to convey it away, whereby it overflowed the vault or receiver and damaged the plaintiff's house ; it can scarcely be doubted that the company is liable. When the company undertook to change the accustomed flow of the surface-water and to concentrate it in under-ground drains and a vault, at a point where but a part of it formerly had harmlessly flowed on the surface ; it was bound, at its peril, to provide adequate means to discharge the water so gathered by it, and to discharge it in a way that would not be injurious to others. This was a perfectly plain duty that was incumbent upon it ; and it is no answer to say that it relied on the judgment of competent engineers in the construction of its works, if, in fact, the works, as constructed, are inadequate to accomplish the purpose, or were unskilfully built. The employment of a competent engineer to direct the work is not the fulfilment of a duty to avoid doing injury to another, when notwithstanding the engineer's competency, the work as constructed does cause injury. The test of liability is not the fitness of the engineer but the efficacy of the work. *Hitchens Bros.* v. *Mayor, &c., Frostburg,* 68 Md. 113, 114, 115.

Assuming this to be true, the doctrine laid down in the instruction, which took the case from the jury, is that a recovery cannot be had against the *original* wrongdoer by one who, after the construction of the work which did the injury, became the owner of the property injured, unless the party sustaining the injury first notifies the wrongdoer to remove the cause of the injury and the latter omits or refuses to do so.    This doctrine is not tenable, and the case of *Picket and Wife* v. *Condon,* 18 Md. 412, relied on to sustain it, does not do so.    Ever since the decision of *Penruddock's case,* 5 Coke, 101, it has been the settled law that the alienee of land upon which a nuisance existed when the alienee acquired the land, is not liable to the owner of other property, subsequently purchased, for an injury done to the latter by the pre-existing nuisance, until the alienee has been first notified to abate the nuisance.    This was all that was decided in *Pickett* v. *Condon.*    Condon acquired property in 1855.    At that time the land had a dam on it across a stream.    Pickett and wife acquired their property in 1856. The dam erected by Condon's grantor caused the water to flow back on Pickett's mill.    Pickett sued Condon and it was held that as Condon's grantor and not Condon had erected the dam, and as Condon had not been notified to remove it, he was not answerable.    The reason of the rule is obvious.    A person who has not erected a work that may become a nuisance or occasion damage or who was in no way connected with its construction is not responsible for the injury it does cause.    If he subsequently becomes the owner of the property upon which the nuisance is located, and thus gets control of the injurious thing, knowledge that it is injurious must be brought home to him and an opportunity must be afforded him to abate it before he can be made liable, otherwise he would be held responsible, not for his own but, for his grantor's wrongful act.    If with that knowledge he does not abate the nuisance he is treated as continuing it.    And so all the cases from *Penruddock's* down have held.    *Ph. & R. Ry. Co.* v. *Smith,* 64 Fed. Rep. 679 ; s. c., 27 L. R. A. 131, and cases there cited.

But the bare statement of the proposition that where the party sued was not the *original* creator of the nuisance, he must have notice of it, and a request must be made to remove it, before any action can be brought, carries with it the exclusion of its application to the *original* wrongdoer. Why should the original wrongdoer have notice before being sued? It is his negligent act which causes the injury, and for that negligent act—and not for a continuance of it after notice given—he is answerable. Notice to him from any one injured by his wrongful act is wholly unnecessary. *Met. Sav. Bank* v. *Manion*, 87 Md. 68. In *Eastman* v. *Amoskeag Mfg. Co.*, 44 N. H. 144, it was held that no notice or request to abate the nuisance is necessary before bringing suit against the *original* wrongdoer; but that the grantee of the nuisance is not liable until upon request made he refuses to remove the nuisance. Even "when he who erects the nuisance conveys the land, he does not transfer the liability to his grantee." *Plumer* v. *Harper*, 3 N. H. 88. It is clear, then, upon reason and authority, that no notice was required to be given by the appellant to the railway company, the original erector of the structure which caused the injury, before the pending suit was brought, and there was consequently error committed in granting the instruction which took the case away from the jury on the sole ground that such notice had not been given.

As to the plaintiff's rejected prayers, but little need be said. There was evidence tending to support the hypotheses which they set forth. If the facts alleged in the *narr.* make a good cause of action, as they undoubtedly do, then the prayers submitting the finding of those facts to the jury should have been granted. There was quite enough evidence from which the jury could well have determined that the injury to the house resulted from the negligent or unskilful construction of, or attention to, the sewer and vault. It is true, it was insisted in the argument, that there was no evidence before the jury to show any relation between the construction of the sewer and vault, and the injury to the

house, and it was contended that although these events were contiguous in time and place there was nothing more than a coincidence in their occurrence and that, therefore, it was a palpable fallacy to assume that the one was the cause of the other. It is sheer sophistry to assume that because a given thing is posterior in occurrence to another, it is, therefore, the result of the anterior event. The plaintiff's contention, however, is not simply that because before the sewer and vault were built there was no injury to the house, and because after they had been constructed there was an injury, that *therefore* the injury was the result of their being built; but the facts tended to show that only when the sewer and vault were choked and overflowed, either by reason of the insufficiency of the outlet or because of the company's inattention to their condition, did the cellar become flooded. The cause of the actual damage was traced to the overflowing vault, and the negligence or unskilfulness of the company occasioned those overflows. Between the alleged cause and its asserted result there was a direct connection in fact—a dependency of the one upon the other as actually traced by one of the witnesses; and this is widely different from that fallacious reasoning in which that which is no cause at all is assumed to produce an alleged effect simply because the two are contiguous in time and place whilst having no other relation to each other than sequence in the order of their occurrence.

There was but one cause proved that produced the injury. There is nothing in the record to bring the case within the doctrine followed in *Wise's case.* That doctrine briefly stated is: When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. A verdict in favor of the party bound to maintain one of those propositions against the other is necessarily wrong. *Co. Com.* v. *Wise,* 75 Md. 42.

For the reasons we have assigned, the prayers of the plaintiff ought to have been granted and the instruction

which was given by the Court ought to have been refused.

Because of these errors the judgment must be reversed and a new trial will be awarded.

> *Judgment reversed with costs above*
> *and below and new trial awarded.*

(Decided December 6th, 1899).