Argued January 24, decided March 7, rehearing granted July 5. 1911.
Reargued and submitted September 6, decided October 10, 1911.

## GIACONI *v.* CITY OF ASTORIA.

[113 Pac. 855: 118 Pac. 180.]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—HIGHWAYS.

1. A municipal corporation in devising plans for improving public highways within its borders acts judicially, and, when proceeding in good faith, is not liable for errors of judgment, but in constructing the work it acts ministerially, and must see that the plan is executed in a reasonably safe and skillful manner.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—HIGHWAYS—DEFECTS
—INJURIES.

2. The rule that if there is a defect in the plan of a sewer, and injury results, the city is liable, as it is the assertion of a proprietary right for the use of its own citizens in which the inhabitants of the State have little interest, does not apply to the improvement of an unopened street, as the latter is an exercise of governmental power by a municipal corporation as the agent of the State, and made for the benefit of the general . public.

MUNICIPAL CORPORATIONS—LIABILITY—OPENING STREETS.

3. In an action against a municipality for damages to land caused by a slide of earth in opening a road where defendant had the services of a competent engineer, and, in running the cross-section lines to determine the amount of cut and fill, he examined the ground where the improvement was to be made, and prepared specifications based thereon, and no slide had ever been known in that vicinity, and he was never informed of the existence of a fissure therein, his judgment respecting the plan was all that reasonably could have been required from an inspection of the condition, and the city was not liable.

MUNICIPAL CORPORATIONS — LIABILITY — OPENING STREETS—RESERVING
CONTROL.

4. In order to render a municipality liable for damages for negligence in the construction of a road, it is necessary for the municipality to reserve a supervisory control over the improvement or a discretionary power over the contract, and where, by the express provisions in a contract for opening up a street, the contractor alone had charge of the improvement, he is not the agent of the city, and the rule of respondent superior does not apply.

MUNICIPAL CORPORATIONS—LIABILITY—OPENING STREETS—ESTOPPEL.

5. Before a slide occurred, where the city's surveyor and other officers knew that injury might result from the continuance of the work, but no effort was made to suspend operations until it was too late to be of any service, but no power to superintend the making of improvements was reserved to the city, the city is not liable on the ground of estoppel.

APPEAL AND ERROR—FINDINGS OF FACT—REVIEW.

6. Under Section 159, L. O. L., providing that the finding of the court on facts shall be deemed a verdict, and may be set aside in the same manner and for the same reason, as far as applicable, findings of fact by the court, in an action at law, are conclusive on the Supreme Court, if there is any evidence tending to support them.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—INJURIES TO OTHER
    PROPERTY—NEGLIGENCE—DEFENSE—GOVERNMENTAL FUNCTIONS.

7. Under Section 358, L. O. L., providing that an action may be maintained against a town for an injury to the rights of the plaintiff arising from some act or omission of such public corporation, where a city adopted plans for the filling of a street, without taking steps to provide a proper foundation for the fill, and by reason of the instability of the ground on which the fill was constructed plaintiff's lower property was damaged, it was no defense that the injury was inflicted in the exercise of governmental power.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—INJURIES TO PRIVATE
    PROPERTY—OFFENSES—EMPLOYMENT OF COMPETENT ENGINEER.

8. Where a city filled a street without providing for a proper foundation, which resulted in the loose ground on which the fill was deposited sliding onto plaintiff's property, to his damage, it was no answer that the city had employed a competent engineer to draw plans and specifications; such employment not being a fulfillment of the city's duty to avoid injury to another, when, notwithstanding the engineer's competency, the work as constructed caused the injury.

MUNICIPAL CORPORATIONS — INJURIES TO PRIVATE PROPERTY — STREET
    WORK—GOVERNMENTAL DUTIES.

9. A municipal corporation is not liable for mere consequential injuries resulting from ordinarily careful administration of a reasonably prudent plan of street improvement; but if the city itself executes any public work it acts ministerially, and is liable for any injury resulting from its negligence or maladministration.

MUNICIPAL CORPORATIONS—PUBLIC WORKS—CARE REQUIRED.

10. The standard of care to be observed by a city in the execution of a public work is such as a reasonably prudent and careful man, under like circumstances, would use, if the responsibility for damages rested on him.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS — INJURIES TO PRI-
    VATE PROPERTY—INDEPENDENT CONTRACTOR.

11. Where plaintiff's property was injured by the collapse of the ground on which a street fill was constructed by a city to improve the

street, because of the city's failure to provide a proper foundation for the fill, it was no defense to the city's liability that the work was done by an independent contractor; he having performed the work in exact compliance with his contract.

MUNICIPAL CORPORATIONS—INJURIES TO PROPERTY—LATERAL SUPPORT.

12. That plaintiff's premises were liable for lateral support of ground over which a city street had been projected, did not justify the city's negligent placing of a fill on such land, the load of which was so great as to cause the soil to slide.

From Clatsop: JAMES A. EAKIN, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by Joseph Giaconi against the City of Astoria to recover damages for an injury to real property. The complaint alleges, in effect, that defendant is a municipal corporation, authorized to grade streets within its boundaries, and in devising plans for ·such improvement and in performing the work is required to exercise care and skill; that extending east and west along the side of a steep hill is Irving avenue, a highway of that city, which is intersected at right angles by Eighteenth street and next east thereof by Nineteenth street; that Grand avenue is next north of Irving avenue, and bounded on all sides by these highways is block No. 24, in Shively's Astoria, 300 feet square; that immediatly north of that block, but separated therefrom by Grand avenue, is block No. 13, of the same area, the north part of which extends into the Columbia river; that plaintiff owns a lot on the south side of block 13 having two buildings thereon, and also owns another building erected on the north side of that block; that on block 24 is a ravine extending to Irving avenue, which gulch is about 50 feet below the ordinary surface of the ground, 250 feet wide at the bottom from east to west in which direction it is nearly level, but slopes abruptly to the north; that this hollow is swampy to an unknown depth, containing numerous perennial springs from which large streams of water constantly

flow, and is incapable of sustaining any superadded weight, rendering any attempt to make a fill thereon dangerous, all of which facts defendant well knew; that the marshy character of the gulch, its declivity, the proximity of plaintiff's property, and the apparent danger of a slide made it incumbent upon the city, prior to adopting any plan for improving the ravine and before the work was commenced to ascertain the depth of the swamp to solid earth, if any, and to determine whether the foundation was sufficient to sustain any imposed weight, but it neglected to make any inspection or to provide any means to prevent a displacement of earth; that the council adopted a resolution declaring an intention to improve Irving avenue from the west line of Eighteenth street easterly, directing the city surveyor to prepare plans, specifications and estimates of the improvements, the cost of which was to have been defrayed by a local assessment of all property within a specified district; that, without investigating the premises, the surveyor filed with the auditor plans and specifications which by reason of defendant's negligence failed to provide for the flowing water, or to drain the land, or to make a safe foundation for the fill, or to construct a bulkhead; that an ordinance was passed limiting the time and prescribing the manner of doing the work, but did not provide for any plan for the embankment, the enactment demanding that the improvement should be made according to the plans of the surveyor and under the defendant's supervision; that, pursuant to the ordinance, a contract was entered into by the city with W. A. Goodin, who, beginning to perform the work according to the plans and specifications of the surveyor and under the defendant's direction, negligently placed on the soft earth in the gulch a small wooden flume and a thin iron pipe to carry off the water, and by heaping clay on such

conduits, without preparing any foundation or retaining wall, or draining the ground, the pipe and flume settled, and with knowledge thereof defendant negligently caused to be placed on the fill large additional quantities of earth, which immediately sank, causing stones, stumps, trees, and other material to be forced down upon and over plaintiff's property, injuring it to the extent of $2,000 for which sum judgment is demanded.

The answer denied the material averments of the complaint, and alleged, *inter alia,* that the plans and specifications were carefully and skillfully prepared by the city surveyor, filed with the auditor, and approved by the council; that the fill was made without any negligence on defendant's part, and every precaution was taken to prevent injury, notwithstanding which a slide occurred that could not have been prevented by reasonable foresight or investigation; and that the improvement was made for the use and benefit of the public, and any injury plaintiff may have sustained was the result of an accident, and not occasioned by defendant's fault or negligence.

A reply put in issue the allegations of new matter in the answer, and, the cause being tried without a jury, the court made findings of fact and of law conformable to the averments of the complaint, except that the damages suffered were only $975, for which sum a judgment was rendered for plaintiff, and defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. Charles H. Abercrombie,* City Attorney and *Mr. J. F. Hamilton,* with oral arguments by *Mr. Hamilton* and *Mr. A. W. Norblad.*

For respondent there was a brief over the names of *Mr. Charles W. Fulton* and *Mr. George C. Fulton* with an oral argument by *Mr. George C. Fulton.*

MR. JUSTICE MOORE delivered the opinion of the court.

The alleged failure to adopt a plan for the proposed improvement and defendant's averred supervision of the work will be considered. To render these questions intelligible requires a more detailed statement of facts than has been hereinbefore given. The resolution adopted by the council declaring an intention to improve Irving avenue required the city surveyor to make and file with the auditor plans and specifications for and estimates of the work, and provided that any matter of construction or drainage found necessary to make the improvement safe or substantial should be done by the contractor, whether specified or not, without extra charge. Pursuant to the resolution, the surveyor ran cross-section lines, examined the land, and filed with the auditor specifications for the improvement, which provided that cuts and fills should be made to make the highway conform to the established grade, and that on certain lines, conduits of designated material and dimensions should be used. The established grade of Irving avenue at Eighteenth and Nineteenth streets is 185 and 191 feet, respectively, above low water on the Columbia River, which stream is nearly parallel with and about 500 feet from the avenue. Though the specifications filed provided for the disposal of surface water the draining of block 24 was not required, nor was any bulkhead or other means suggested to prevent a possible slide. The ordinance limiting the time and prescribing the manner of the grading demanded that the performance of the work be let to the lowest bidder, and that "the contract shall provide that said improvements shall be constructed and completed to the satisfaction of the committee on streets and public ways, and the superintendent of streets and the city surveyor." The contract stipulated that the improvement should be made strictly as provided for by the plans

and specifications and the ordinance, and that Goodin should have full charge of the work. He installed at the designated places conduits of the character demanded and began to make the fill, but soon discovered that the surface of the ravine was gradually settling, carrying down and breaking the drain pipes which he had laid, and upon demand of the committee on streets he put in a box drain made of wood, but it soon sank. When about 3,000 cubic yards of earth had been moved into the fill, a heavy rain occurred, and a sink hole appeared into which were daily placed about 200 cubic yards of soil without making much change, so that on the following morning the cavity would seem as vacant as it had on the preceding morning. When working near this hole, an unknown spring was revealed, which constantly discharged sufficient water to fill a two-inch pipe. Below the fill, as the embankment rose, the surface of the ravine began to crack, bulge and gradually to move towards the river. In the rainy season water flowed from the gulch which at one time was so swampy that a horse had been mired, but in the summer when the specifications were prepared and the improvement undertaken no water appeared on the surface. Near the fill, however, an oval pool, comprising about 100 square feet, contained a little water. Displacement of soil had occurred in other parts of Astoria, but none had ever been known to happen where the slide here spoken of took place.

A. S. Tee, who had been city surveyor of Astoria nearly 10 years, and whose experience as a civil engineer covered a period of 31 years, testified that he was not requested by any one to ascertain whether or not the surface of the ravine was sufficient to sustain an embankment of 32 feet, which was its height at the deepest place in the gulch; that until the ground began to settle he had never entertained a doubt on the subject of the stability

of the soil; and that he had also supposed the pipes provided for and which was placed in trenches under the fill were adequate to carry off all the water.

W. A. Goodin testified that in clearing the right of way on Irving avenue, before the resolution was adopted declaring an intention to make the improvement, he discovered cracks in the earth at the place where the slide subsequently occurred. This witness did not inform the city surveyor or any one of this fact, so far as disclosed by the transcript.

G. B. Hegardt and T. H. Curtis, civil engineers of many years' experience, who examined the premises after the injury, severally testified that, before any improvement was undertaken at that place, the subsoil should have been examined by boring to determine whether or not a foundation could have been secured sufficient to sustain the weight of the fill, and that provision should have been made for a system of drainage which was as essential as a safe basis for the fill.

1. Predicated on such testimony, a finding was made that defendant did not exercise care or skill in providing plans or specifications for the improvement or for drainage. The conclusion thus reached seems to have been questioned by the trial court, for with the findings was filed an opinion wherein it was said:

"But, even if there should be a doubt as to the question of negligence in preparing or failing to prepare a proper plan of improvement, the subsequent conduct of the city in regard to the fill in the gulch after the hillside began to move out leaves my mind entirely free from doubt as to the liability of the city."

A municipal corporation in devising plans for improving public highways within its borders acts judicially, and when proceeding in good faith is not liable for errors of judgment; but in constructing the work it acts ministerially, and is bound to see that the plan is executed in a.

reasonably safe and skillful manner. *Goddard* v. *Inhabitants of Harpswell,* 84 Me. 499 (24 Atl. 958: 30 Am. St. Rep. 373, 379); *Chicago* v. *Norton Milling Co.,* 196 Ill. 580 (63 N. E. 1043); *Lansing* v. *Toolan,* 37 Mich. 152; *Defer* v. *Detroit,* 67 Mich. 346 (34 N. W. 680); *McDonald* v. *Duluth,* 93 Minn. 206 (100 N. W. 1102); *Watters* v. *Omaha,* 76 Neb. 855 (107 N. W. 1007: 110 N. W. 981).

2. The exemption of a municipal corporation from liability for injuries resulting from errors or defects in the plan of public work is criticised by a text-writer who in referring to decisions upholding the principle says:

"We think, however that the rule is too broadly stated in these cases, and that there are instances in which a city may be liable for injuries caused by defects in the plan of a street or sewer. It seems to us that a distinction should be drawn between those cases in which the defect in the plan arises from a mere error of judgment and those in which the defect arises from negligence in devising or adopting the plan." Elliott, Roads & Streets (2 ed.) § 473.

In the succeeding section the learned author elucidates this animadversion by the following statement:

"If the city has obtained the professional advice of one skilled in such matters, and has used due care in selecting its adviser, it will generally be free from liability, if, in consequence of following such advice, the structure, or other improvement, as the case may be, turns out to be defective."

We concur in what Judge Elliott has said respecting a sewer, for the rule seems to be that for a defect in a plan therefor, in consequence of which an injury results, the city is liable for ensuing damages. Plaintiff's counsel cites many cases in support of this principle, but no reference thereto will be made, since it is believed they are not in point because the improvement of an unopened street is an exercise of governmental power by a municipal corporation as the agent of the state and made for

the benefit of the general public, while the building of a
sewer is more in the nature of an assertion of a propri-
etary right by a city for the use of its own citizens in
which the inhabitants of a state at large can have but
little interest. *Denver* v. *Rhodes,* 9 Colo. 554 (13 Pac.
729) ; *Donahoe* v. *Kansas City,* 136 Mo. 657 (38 S. W.
571).

3. In order to devise a proper plan defendant had
the service of its surveyor, who is a competent engineer,
and in running the cross-section lines to determine the
amount of the cut and fill, he examined the ground where
the improvement was to have been made, and prepared
specifications based on such investigation. We think his
judgment respecting the plan was all that could reason-
ably have been required from an inspection of the then
condition of the soil, when it is remembered that no slide
had ever been known in that vicinity, and that he was
never informed, so far as we can determine, of the exist-
ance of the fissures which Goodin saw. It was not diffi-
cult for the expert engineers who examined the premises
after the injury, accurately to state what precautions
should have been taken. It will be kept in mind that the
conditions presented to their attention were very differ-
ent from what were seen when the city surveyor made
his observations, and, in view thereof and of the further
fact that the city employed a competent engineer, we
think there was not such negligence in adopting a plan
as to render the defendant liable.

4. The remaining question is whether or not the
improvement was made under defendant's direction as
alleged in the complaint. The execution of the plan is a
ministerial service, and for any negligent performance
thereof liability attaches. The contract did not stipu-
late that any officer of the city should direct the manner
by which the fill was required to be made. The specifica-

tions contained a detailed statement of what the embankment should be when finished, and constituted a guide for the performance of the work. It was stipulated that the improvement should be constructed and completed to the satisfaction of certain city officers. This clause probably authorized them to inspect the work until it was finished to see that it conformed to the requirements of the contract. The "satisfaction" referred to evidently meant a legal approval of the improvement, and, if the work had been performed in substantial compliance with the stipulations, the law would hold the officers satisfied. The resolution declaring an intention to grade the avenue provided that "any matter of construction and drainage found necessary to make the improvement safe or substantial shall be done by the contractor, whether specified or not, without extra charge." The committee on streets, who with others were to be satisfied with a performance of the work, demanded of Goodin the placing of a box drain under the fill, and he complied therewith. The right to exercise any discretion respecting a performance of the work seems to have been limited to necessary drainage, and it is quite certain that the means adopted for that purpose at the suggestion of the committee on streets did not cause the injury, but that the slide was probably occasioned by attempting to make the fill. The defendant did not reserve any supervisory control over the improvement nor any discretionary power over the contract itself, which restrictions are essential to make a city liable for the acts of a contractor in the performance of work. *Chicago* v. *Joney,* 60 Ill. 383; *Chicago* v. *Dermondy,* 61 Ill. 431. It has been held, however, that the reservation by a municipality in letting a sewer contract of the right to change, inspect and supervise to the extent necessary to produce the result intended by the contract will not render it liable

for negligence of the independent contractor, provided the plan is reasonably safe, the work is lawful, is not a nuisance when completed, and there is no interference therewith by municipal officers. *Uppington* v. *New York,* 165 N. Y. 222; (59 N. E. 91: 53 L. R. A. 550). By the express provision of the contract Goodin had full charge of the improvement in the making of which he was not the agent of the city, and the doctrine of respondeat superior can have no application to the case at bar.

5. A careful examination of the entire testimony which has been sent up fails to disclose that any direction was given by defendant's officers or agents respecting a performance of the work, except that Goodin was required to place a box flume in the fill, a duty imposed upon him by the resolution whenever necessity demanded a drain. Before the slide occurred, the city surveyor and other officers knew that injury might result from a continuance of the work, but no effort was made to suspend operations until it was too late to be of any service. However, as no power to superintend the making of the improvement was reserved, the defendant was not liable on the ground of estoppel.

As we view the testimony, there is no controversy respecting the facts, and, believing the conclusions of law as deduced by the court below are erroneous, the judgment is reversed, and the cause remanded for such further proceedings as may be necessary not inconsistent with this opinion.                    REVERSED.

Rehearing granted July 5, 1911. Reargued September 6, decided
October 10, 1911.

## ON REHEARING.

[118 Pac. 180.]

Statement by MR. JUSTICE BURNETT.

This is an action at law, brought to recover damages
for the injury alleged to have been caused to the plain-
tiff's real property by the negligence of the defendant in
grading a street within the municipal boundaries. The
answer pleaded the general issue, and alleged affirma-
tively that the work was done by the city in a careful
manner, through the agency of its contractor, and that
what happened was the result of a pure accident, with-
out fault or negligence on the part of the defendant. This
new matter was in return traversed by the reply. By
consent of the parties, the cause was tried before the
court without a jury. The substance of the findings of
fact returned by the court is here given:

The defendant is a municipal corporation having
power to improve and repair streets within its bound-
aries. Irving Avenue has been and at all the times men-
tioned was a duly dedicated street accepted by the defend-
ant as such, but has never been improved. It runs prac-
tically east and west through that portion of the city laid
out by John M. Shively, and generally known as "Shively's
Astoria." North of Irving avenue, parallel therewith and
divided therefrom and from each other by tiers of city
blocks, are Grand avenue and Franklin avenue, in the
order named. Crossing Irving avenue and running prac-
tically north and south, and parallel with each other
and divided by tiers of blocks, are Eighteenth and Nine-
teenth streets, both of which lie on a steep and precipit-
ous hillside, between which, and including a portion of
each, was a gulch or canyon, from which water flowed
in perennial springs, and in which the earth was soft,

swampy, and unstable, of all which the defendant city had at all times notice and knowledge.

Plaintiff owned real property lying in the second tier of blocks northerly from that part of Irving avenue included between Eighteenth and Nineteenth streets, and had and maintained thereon, prior to the occurrences described in the pleadings, three dwellings. All that part of Irving avenue included in and lying east of Eighteenth street was wholly unimproved, and was in a state of nature. Except that portion included in the gulch, already mentioned, the same lay on the steep, precipitous hillside, at an elevation of about 180 feet above plaintiff's real property. The part in the gulch was about 50 feet in depth below the ordinary elevation of ground surrounding it, and was fully 35 feet below the established grade of the avenue in question. The gulch was about 250 feet in width, its surface being comparatively level east and west, but sloped to Grand avenue, a distance of about 300 feet, where it met an abrupt descent of about 15 feet to the level of plaintiff's property. By reason of the fact that the soil in the gulch was of such unstable character, and by reason of the steep slope thereof, it was incapable of sustaining any weight, and was wholly insufficient as a foundation for the fill for Irving avenue, and it was wholly unsafe to attempt to fill in that avenue at that place. An examination of the same would have disclosed to any careful and prudent person that those grounds were thus insufficient, and that an attempt to make a fill in the gulch, to bring the same up to the established grade of the street, would cause it to sink and slide, and force and drive the soft soil down upon the blocks in which plaintiff's real property was situated. The defendant, however, did not make any examination of the land whatever, but adopted and passed a resolution declaring its intention to improve Irving avenue by grading the same, to full width of the

avenue, to the established grade, and directed the city surveyor to prepare plans and specification for the construction of the improvement in accordance therewith. Pursuant to  said resolution, the city surveyor, without making any examination of the ground whatever, and without any request on the part of the defendant that he should make an examination, prepared and filed such plans and specifications for the proposed improvement, by which it was provided that the gulch between Eighteenth and Nineteenth streets should be filled with earth to the established grade of Irving avenue at said point, and to the full width thereof, requiring a fill in said gulch of 35 feet in height by 50 feet in width and about 250 feet in length, which plans and specifications were adopted by the city.  The defendant did not provide for taking care of or confining any of the waters in the soft and swampy ground in the gulch, and made no provision for draining the same, but simply required the fill to be placed on top of the unstable, soft soil already mentioned, without providing any foundation for the fill, or any means to prevent it from sliding down the hillside.

On September 6, 1907, the city duly adopted and passed an ordinance to improve Irving avenue, but the ordinance did not provide any plan for the improvement or any part thereof, other than it required that portion of the avenue to be improved by grading the same to its full width and to the established grade by filling in earth in the fill to the full width of the street, to bring the same to the established grade, and required the work to be done in accordance with the plans and specifications theretofore made by the city surveyor and mentioned above.  The ordinance further provided that the improvement should be let to the lowest bidder, as by the law required, and that the work should be done

under the supervision, direction, and control of said defendant, and in accordance with the plans and specifications made by the city surveyor. The city subsequently entered into a contract with one W. A. Goodin to make the improvements, and the terms of the contract required Goodin to make said fill between Eighteenth and Nineteenth streets as aforesaid, but under the control and direction of the defendant. On October 10, 1907, the contractor entered upon and proceeded to make the improvement, and in accordance therewith, and under the direction of the defendant, placed on top of the soft soil in the gulch, for the purpose of permitting the water back and south of the fill to discharge itself through the fill and gulch, a small wooden box or flume, and a small thin sheet iron pipe, and then carelessly and negligently placed on top of the soil, without providing any foundation therefor or either thereof, a large amount of dirt and earth, all of which was done in accordance with the plans and specifications and under the direction of the defendant. Immediately upon this dirt and earth being placed on the soft soil and on top of the box flume and iron pipe, the same, together with the earth and clay, were forced down into the soft soil, and the box flume and iron pipe became wholly destroyed, of all of which the defendant had full notice and knowledge, but nevertheless continued, under the protest and objection of the plaintiff, to place thereon additional dirt, and thereupon the soft soil was forced from beneath the fill, and the ground, together with said fill, moved down upon the property of the plaintiff, doing great damage to him, of all of which the defendant had full knowledge and notice; but nevertheless the defendant thereafter, and after the dirt which had been placed in the fill had been forced down upon the property, still continued to place thereon

additional dirt amounting to many thousands of yards, whereby the buildings of plaintiff were forced from their foundations and smashed and broken, and his real property was covered by dirt and other debris, to the great damage and injury of the plaintiff. In order to prevent the total destruction of his buildings, the plaintiff was required to and did remove from said premiseъ a large quantity of earth and other debris, and was compelled to and did incur large expense for the repairs of his buildings. The court found that the conduct of the defendant was negligent, and assessed damages for the plaintiff in the sum of $975. Afterwards, at the request of the defendant, the court made additional findings to the effect that the city surveyor mentioned was, at all times stated in the complaint and long prior thereto had been a competent and skillful engineer with many years experience in devising plans for improvements for municipal purposes, and that the plaintiff's property, described in his complaint herein, at no place or point abuts on Irving avenue, or is less than 350 feet distant from that avenue. On these findings the court rendered judgment for the plaintiff, from which the defendant appeals.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. F. H. Hamilton.*

For respondent there was a brief and an oral argument by *Mr. George C. Fulton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

MR. JUSTICE MOORE dissents.

6. "The finding of the court upon the facts shall be deemed a verdict and may be set aside in the same manner and for the same reason, as far as applicable, and a new trial granted." Section 159, L. O. L.

This being an action at law, the facts as disclosed by the court's findings are thus established beyond our

power to gainsay. We cannot rehear the cause upon the issues of the fact, or give futher attention to the testimony in any event, than to ascertain if there is any evidence tending to support the findings of fact. *Astoria Ry. Co.* v. *Kern,* 44 Or. 538 (76 Pac. 14) ; *Flegel* v. *Koss,* 47 Or. 366 (83 Pac. 847) ; *Seffert* v. *Northern Pacific R. Co.,* 49 Or. 95 (88 Pac. 962) ; *Courtney* v. *Bridal Veil Box Factory,* 55 Or. 210 (105 Pac. 896).

7. We have carefully examined the testimony, and, in our judgment, there is ample to justify the findings of fact. Indeed, there is little dispute as to what really occurred. The defendant contends on various grounds, in effect, that the judgment was not the proper legal conclusion to be drawn from the premises disclosed by the fact as determined by the court. In this State an action may be maintained against a corporate town in its corporate character, and within the scope of its authority, for an injury to the rights of the plaintiff arising from some act or omission of such public corporation. Section 358, L. O. L. This statute clarifies the discussion, as affected by many of the precedents cited by the defendant, where, for want of such legislation, the courts were powerless to afford relief against injury inflicted under the ostensible exercise of governmental power. The principal contention for the defendant is that, within the meaning of *Brand* v. *Multnomah County,* 38 Or. 79 (60 Pac. 390: 62 Pac. 209: 50 L. R. A. 389: 84 Am. St. Rep. 772), and other like precedents, the grievances of which the plaintiff complains were consequential injuries resulting from the exercise of the city's governmental function of improving its streets. Herein is involved the distinction between the legislative and administrative powers of the city. The issue in this aspect of the case is whether the city acted wholly within its sphere as a governmental agent, wherein it is immune in respect to mere errors of judgment, or whether what it did was

in its ministerial capacity, to which the consequences of negligence and maladministration will attach. In the leading case of *Perry* v. *Worcester,* 6 Gray (Mass.) 544, 547 (66 Am. Dec. 431), the court, speaking by Chief Justice SHAW, lays down the rule that the exercise of the governmental function exonerates a municipality from liability for such damages as necessarily results from the act. "But," says the learned judge, "this presupposes that the public work thus authorized will be executed in a reasonably proper and skillful manner, with a just regard to private owners of estate. If done otherwise, the damage is not necessarily incident to the accomplishment of the public object, but to the improper and unskillful manner of doing it. Such damage to private property is not warranted by the authority under color of which it is done, and is not justifiable by it. It is unlawful, and wrong, for the redress of which an action of tort will lie."

In *Rochester White Lead Co.* v. *Rochester,* 3 N. Y. 463 (53 Am. Dec. 316), the court holds that the ordinance of the common council directing a public improvement is judicial in its nature, and extends immunity from private action for damages to those who perform the duty; but there this immunity ends. The further prosecution of the work is purely of a ministerial character, and the city is bound to see that it is done in a safe and skillful manner. *Aschoff* v. *Evansville,* 34 Ind. App. 25 (72 N. E. 279) teaches that a municipal corporation is liable for the negligent discharge of ministerial duties arising by necessary implication, even in connection with governmental functions. In *Ely* v. *St. Louis,* 181 Mo. 723 (81 S. W. 168) the rule is laid down that passing an ordinance declaring a street to be opened is legislative, but the process of opening and improving the street is ministerial, in respect to which actionable negligence may be predicated. *McKenna* v. *St. Louis,* 6 Mo.

App. 320, classes making and improving of streets as a ministerial duty. It is said, in *Sadlier* v. *City of New York,* 185 N. Y. 408, 419 (78 N. E. 272, 276) that:

"No liability is incurred for a structure erected in the exercise of the governmental powers, * * unless, by negligence and lack of care in the performance of the work, * * a direct injury is thereby occasioned."

The same conclusion is established in *Gilman* v. *Lacronia,* 55 N. H. 130 (20 Am. Rep. 175). The Supreme Court of Minnesota, in *Kobs* v. *Minneapolis,* 22 Minn. 159, holds the municipality liable for turning an unusual quantity of water from the street upon plaintiff's premises. Although the city had right under its governmental functions to abate the nuisance of standing water, yet, says the court, "the act of removal· was a ministerial one, in the performance of which the defendant was legally bound to take all such reasonable care and precaution against possible and contingent injuries to others as a discreet and cautious individual would and ought to exercise under like circumstances, were the whole loss or risk to be his alone." In *Augusta* v. *Little,* 115 Ga. 124 (41 S. E. 238), the court says: "The adoption by a municipal corporation of a plan for grading the streets and sidewalks of a city is a *quasi* judicial act, and if the plan adopted be erroneous the city cannot be held liable to a private person, who is injured thereby. If the execution of this plan—the construction of the pavement—be unskillful or negligent, the city would be liable; for the constructionn would be a ministerial act." The case of *Miles* v. *Worcester,* 154 Mass. 511 (28 N. E. 676: 13 L. R. A. 841: 26 Am. St. Rep. 264), states the rule thus: "If the city adapting a lot of land for school house purposes builds and maintains a retaining wall between the lots and the land of an adjoining owner and by the action of the elements, or otherwise, without his fault, the wall comes upon his land and con-

tinues there, it becomes a nuisance, for which the city is responsible to such owner." In *Burford* v. *Grand Rapids,* 53 Mich. 98 (18 N. W. 571: 51 Am. Rep. 105), the rule is thus stated: "If the act which was done by a municipal corporation be tortious, if done by a natural person, the corporation is held liable for it to the same extent and for the same reason that the natural person would have been." The Supreme Court of Iowa, in *Hendershott* v. *Ottumwa,* 46 Iowa 658 (26 Am. Rep. 182), says: "It is well settled that if in making changes in the natural surface of the streets the city is negligent in construction, so that the adjacent lots are injured by reason of such negligence, the city is liable for such injury." The same Court further says, in *Hume* v. *Des Moines,* 146 Iowa 624, 646 (125 N. W. 846, 854: 29 L. R. A. [N. S.] 126), that "as the city had power to grade and gutter its streets, it is not liable for defective plans, for in adopting them it acts in a judicial capacity. But it is liable if it negligently carries out such plans, or, without the adoption of any plans, it proceeds in a negligent manner to make embankments of fills, to the injury of an abutting or adjoining proprietor." Finally, on this point, the supreme court of Maryland, in *Thillman* v. *Baltimore,* 111 Md. 131 (73 Atl. 722), states the rule thus: "Although the powers granted to a municipality by its charter to open, grade and pave streets * * are discretionary, any particular plan that may be adopted must be a reasonable one, and the manner of its execution thence becomes, with respect to the rights of the citizen, a mere ministerial duty; and for any negligence or unskillfulness in the execution or construction of the work, whereby injury is inflicted upon private right, the municipality will be held responsible." The following authorities are helpful on this branch of the case: *Donahoe* v. *Kansas City,* 136 Mo. 657 (38 S. W. 571); *Bullmaster* v. *St. Joseph,* 70 Mo. App. 60

*Valparaiso* v. *Adams,* 123 Ind. 250 (24 N. E. 107) ; *O'Donnell* v. *White,* 23 R. I. 318 (50 Atl. 333) ; *Jones v. Henderson,* 147 N. C. 120 (60 S. E. 894) ; *Davis* v. *Silverton,* 47 Or. 171 (82 Pac. 16).

An examination of the cases discloses that the courts of some states, notably Indiana and Maryland, attribute negligence to a city in the adoption of defective plans. Most of the courts, however, confine negligence to the execution of the plans. In sound reason, it can matter little in many cases whether negligence be predicated of careless execution of a practical plan for public improvements, or of a vicious and impractical plan itself. Governmental powers should be exercised in accordance with the principles of natural justice and common sense. A municipality ought not to be upheld by the courts in the heedless adoption, under the guise of legislation, of some crude scheme which cannot be accomplished without the infliction of direct, as distinguished from consequential, injuries upon some of its citizens. To hold otherwise would be a long step towards sanctioning the ruthless exercise of arbitrary power. Immunity for mere error of judgment in matters of governmental cognizance ought not to be overturned or impaired.; but when public works are planned with such carelessness as to amount to absence of judgment the reason of the rule fails, and the application thereof fails with it.

8. It is contended, on the question of negligence, that, the city having employed a competent engineer, in the person of the city surveyor, to draw plans and specifications, it has gone as far as required in the matter of diligence, and cannot be held liable for the result. This presupposes that however competent the engineer may have been, it was his duty, as the servant of the city, for whose conduct the city was responsible, to act in a careful and circumspect manner in drawing the plans. The rule is thus stated in the case of *Lion* v. *Baltimore*

Sig. 2

*City Passenger Ry. Co.,* 90 Md. 266 (44 Atl. 1045: 47 L. R. A. 127). "The employment of a competent engineer to direct the work is not the fulfillment of a duty to avoid doing injury to another, when, notwithstanding the engineer's competency, the work as constructed does cause injury. The test of liability is, not the fitness of the engineer, but the efficacy of the work."

9. In its brief, the appellant lays great stress on the case of *Reardon* v. *San Francisco,* 66 Cal. 492 (6 Pac. 317), in which the facts were greatly like the ones in the case at bar; but that case is easily distinguished from the present one on two grounds: First, the court held that there was no sufficient pleading of negligence on the part of the municipality; and, second, in California, at that time there was no statute like ours, quoted above, granting a cause of action to a person injured by the acts of a municipality in its corporate character. *Miles* v. *Worcester,* 154 Mass. 511 (28 N. E. 676: 13 L. R. A. 841: 26 Am. St. Rep. 264), is more applicable to the case at bar, and is founded on better logic. From the weight and reason of the precedents, the rule may be thus stated: A municipal corporation is not liable for mere consequential injuries resulting from ordinarily careful administration of a reasonably prudent plan of street improvement devised by the municipality in its governmental capacity; but, in the execution itself of any public works, the city acts ministerially, or, in the words of the statute, "in its corporate character and within the scope of its authority," and for its negligence or maladministration in that relation, resulting in an injury to the rights of another, it is liable in the same way and for the same reason as a natural person or private corporation would be under the same circumstances of executive management.

We conclude that negligence may be imputed to a municipality in the execution of a plan of public improve-

ment devised by it in its legislative capacity. Negligence is a question of fact. In the case of *Palmer* v. *Portland Ry. Light & Power Co.*, 56 Or. 262 (108 Pac. 211), this court declared the rule that it is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered as one of law for the court. The precedents are so thoroughly collated by the opinion of Justice KING in that case that further citation on this point is unnecessary.

10. The standard of care to be observed by the city in such cases is such that a reasonably prudent and careful man in like circumstances would use, if the responsibility for damages rested upon him. All would most likely agree that a wide and level pedregal would be a safe foundation for a fill of the character and dimensions described in the city ordinance. None would probably contend that a steep declivity of shifting sand would be suitable for that purpose. But between these extremes the question is one of fact, which must be decided by the jury, or the court, acting in the capacity of a trier of the facts. The right of the city to decree by ordinance that Irving avenue should be improved by filling it to the established grade may be well admitted; and it may be further conceded that the terms of the ordinance itself would not constitute sufficient proof of negligence on the part of the city. But, when the ordinance, whatever its terms may be, is to be applied in practice, a ministerial duty on the part of the city arises, involving care and prudence of administration. It thus became a question of fact, in the case at bar, whether the city, in carrying out the project of improving Irving avenue, acted as a reasonably careful and prudent individual would act in that situation, under like responsibility, in piling many thousands of yards of earth upon a hillside where the ground was soft and swampy, with-

out providing any other foundation or making any effort to retain it in place. This issue of fact was submitted to the court instead of a jury, as a trier of the fact, and has been determined against the defendant. We cannot disturb this conclusion of fact, for which there is authority in the testimony.

11. The defendant further urges, however, that the work was let to an independent contractor, who alone is answerable for the injury resulting to the defendant, if he has any cause of action at all. The general rule is that an employer is not liable for the acts of an independent contractor, for the reason that the latter is not subject to the control of the employer. To this rule, however, there are certain well-recognized exceptions. Among these exceptions are cases in which the injuries are the necessary consequence of executing the work in the manner provided for in the contract, or subsequently prescribed by the employer, and those in which the injuries are caused by the violation of some absolute, nondelegable duty, which the employer is bound to discharge. In *Chicago* v. *Robbins,* 2 Black 418 (17 L. Ed. 298), the rule is thus stated, in effect: "If the injury occurs necessarily in ordinary methods of doing the work, the principal is liable, although he employed a contractor; but, if it happens solely by neglect of the contractor, he alone is responsible. Where the work is done according to agreement by a contractor, the city is liable for damages arising from the performance of the work in the manner required by the contract. *Sewall* v. *St. Paul,* 20 Minn. 511, 524 (Gil. 459). "A city is liable for the doing of that which it has directly authorized, or which necessarily results from the doing of that which it was contracted or directed to have done, although it is done by a contractor, unless what is done is that which the city not only had the right to do, but to do it in the manner

it did it." *Chicago* v. *Norton Milling Co.,* 97 Ill. App. 651. In the case of the *City & Suburban Ry.* v. *Moores,* 80 Md. 348, 354 (30 Atl. 643, 644: 45 Am. St. Rep. 345, 347), the rule is thus stated: " The person for whom work is done may still be liable, if the injury is such as might have been anticipated by him as a probable consequence of the work let out to the contractor, or if it be of such character as must result in creating a nuisance, or if he owes a duty to third persons or the public in the execution of the work." In *Jacobs* v. *Fuller,* 67 Ohio St. 70 (65 N. E. 617: 65 L. R. A. 833), it is held that the employer is liable for injuries which might be reasonably apprehended from the nature of the undertaking although it was let to a contractor. Again, in *Thomas* v. *Harrington,* 72 N. H. 45 (54 Atl. 285: 65 L. R. A. 742), it is stated that an employer is liable for injury which is the direct result of the work contracted for, although it is performed by a contractor. In the apt words of Lord Chief Justice Campbell, in *Elliott* v. *Sheffield Gas Co.,* 2 E. & B. 767, "if the contractor does the thing which he is employed to do, the employer is responsible for that thing, as if he did it himself." See, also *De Ford* v. *State,* 30 Md. 179; *Thillman* v. *Baltimore,* 111 Md. 131 (73 Atl. 722); *Hole* v. *Railway,* 6 H. & N. Exch. 488; *McAllister* v. *Albany,* 18 Or. 426 (23 Pac. 845). The work in question lies properly within both the exceptions noted, at least within the first. It is plain that for injuries resulting from work performed by the contractor in the manner directed by the city the latter cannot escape responsibility; neither can it be exonerated from liability for what might reasonably have been expected from the manner in which it contracted for the work to be done, although performed by an independent contractor.

12. The defendant also contended at the argument that the premises of the plaintiff were liable for lateral sup-

port, but that would not justify the negligent application of a load far beyond the capacity of the soil to withstand; neither does the evidence in the case nor the findings of fact justify the conclusions that this was an inevitable accident. The court has found the facts that the execution of the work was negligent, and was the superinducing cause of the damage. The judgment of the court below was not erroneous as charged, and should be affirmed. It is so ordered.    AFFIRMED.

Mr. Justice Moore dissents.