Argued January 8, reversed and remanded February 17; 1920.

## ARSTILL *v.* FLETCHER.

(187 Pac. 854.)

**Pleading—Amendment Changing Action from Trespass to Contract Properly Allowed.**

1. Plaintiff, a land owner, who sued a contractor and a drainage district on the ground that, in construction of the ditch in part over plaintiff's land, earth excavated was thrown on the land of another, *held*, in view of Section 102, L. O. L., properly allowed to file an amended complaint more fully setting forth the facts, despite the claim that the first complant was one in trespass, and the second for breach of contract; each complaint showing the same facts.

Drains—Land Owner cannot Complain That Earth from His Land was Thrown on Adjacent Land to Make Barrier Where "Plan" Made No Provision for Such Method.

2. The "plan" required by Laws of 1915, page 540, relating to the formation of drainage districts, need not specify the disposition of earth to be excavated; a "plan" contemplating the representation of anything drawn on a plane, as a map or chart. Hence a land owner cannot complain that, though the plan for ditch did not so provide, earth excavated was placed on the west side of the ditch on the land of another owner to serve as a barrier against high water; the work being carried on under the direction of officers of the district.

Drains—Plan Approved by Drainage Officers Conclusive in Absence of Fraud.

3. Under Laws of 1915, page 540, the officers of a drainage district have authority to approve plans for construction of a ditch, and, in the absence of fraud, the plan as approved by the County Court cannot be reviewed collaterally by any other tribunal.

Evidence—Effect of Admissions of Counsel.

4. Where plaintiff's counsel at the trial admitted that a drainage ditch constructed over plaintiff's land was constructed with authority, and the only contention was over the disposition of the earth excavated, plaintiff cannot recover on the theory that private property cannot be taken under Constitution, Article I, Section 18, for public use without just compensation.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 1.

The individual defendants are the supervisors and contractor of the corporate defendant, the Big Nestucca Drainage District. The plaintiff owns a quarter-section of land in Tillamook County in the territory controlled by the Drainage District. In the first complaint filed it is said that:

"In the exercise of its said jurisdiction, the said drainage district acting by and through the defendant directors, on or about the first day of April, 1918, laid out and established a system of drainage ditches in said district, had the same duly located and surveyed, and located and established one of the said drainage ditches over and within the said lands of the plaintiff, said ditch being wholly within the said lands of the plaintiff, and running along the west boundary line of said lands."

This allegation is admitted by the answer. The burden of the plaintiff's grievance is that the district through its contractor and supervisors deposited the earth taken from the ditch on the west side thereof, where it rested mainly, if not entirely, upon the land of another proprietor, instead of putting it on the east side, where it could be used by the plaintiff in filling low places on his land. He asserts that by this means he was wrongly deprived of more than six thousand cubic yards of earth belonging to him, of the reasonable value of fifty cents per yard, aggregating $3,000, for which sum as damages he demands judgment.

The organization of the defendant drainage district, the official character of its supervisors, and the fact that the defendant Fletcher was a contractor, are all admitted. The wrongs complained of are denied. The answer avows the establishment of a system of drainage ditches in the district, one of which runs along the west boundary line of the plaintiff's lands and says that he granted a right of way and license for the construction of the ditch, in pursuance of which the work was done. The defendants claim that the property in that neighborhood, including that of the plaintiff, was damaged by the overflow of Clear Creek; that the surplus waters ran from plaintiff's tract westerly through other holdings in the district which were lower than his and of a swampy character, and that in the construction of the ditch the intention was to take care, not only of the ordinary flow of the creek, but also to prevent the flood waters from running over upon the lands to the westward; and in order to do so the earth excavated in constructing the ditch was deposited in large part on the west, so as to raise an embankment designed to aid in preventing the overflow of the water to the west. It is further stated in substance that the

earth not needed for that purpose was deposited upon the lands of the plaintiff.

The reply challenges the answer in material particulars and denies that the plaintiff gave any license or right of way for the construction of the ditch. After the case was thus at issue, the court, over the objection of the defendants to the effect that it would change the issues to be tried, allowed the plaintiff to file an amended complaint. This new pleading states the organization of the district and the official character of the supervisors and the fact of Fletcher's being a contractor, as in the first complaint, and it says that the district, acting through its supervisors, surveyed and laid out a proposed system of drainage ditches, locating one section thereof within plaintiff's lands running parallel to the west boundary thereof. The following averment appears in the amended complaint:

"That on or about the date last mentioned, said system of drainage was formally adopted by said district, but neither the said defendant district, nor either of the other defendants, acquired any rights in or to said lands, or any rights to construct the said section of said drainage ditches thereover, by condemnation, or otherwise, other than a mere oral license from the plaintiff to the defendant district to construct said section on plaintiff's premises, aforesaid, as proposed by said plan, which license was coupled with the expressed condition that all soil and earth taken or excavated from the said section would be the property of the plaintiff, and should be deposited upon the plaintiff's land for his use and benefit."

The remainder of the new pleading respecting the excavation of the ditch and the deposit of the earth on the west side thereof is substantially the same as in the first instance. It was stipulated that the original

answer should be deemed an answer to the amended complaint and that the reply should stand as before.

On the issues thus formed the cause came on for hearing. At the beginning of the trial, the plaintiff by his attorney stated to the court and jury that the plaintiff did not question or dispute the right of the defendants to construct the ditch; that he desired it to be constructed, and that the defendants had a right to excavate the same; but that he claimed to be entitled to the dirt removed therefrom. Later on, after the plaintiff himself was sworn as a witness, his attorney renewed the admission, saying that, "We do not dispute the right of the defendants to excavate the dirt in question from the ditch." The defendants then objected to the introduction of any testimony in the action, assigning as a reason that, under the condition brought about by plaintiff's admission in open court, the complaint does not state facts sufficient to constitute a cause of action. The court overruled the objection.

The case proceeded to trial, resulting in a verdict in favor of the plaintiff and against the district only, for the sum of $500, and a judgment was rendered in favor of the plaintiff and against the district for that amount of money, together with costs and disbursements. All the defendants appeal. Reversed and Remanded.

For appellants there was a brief and an oral argument by *Mr. H. T. Botts.*

For respondent there was a brief over the name of *Messrs. Johnson & Handly,* with an oral argument by *Mr. Sidney S. Johnson.*

BURNETT, J.—1. Opposing the filing of the amended complaint, the defendants argued that the original complaint stated a cause of action substantially for trespass and the amended complaint sets forth a breach of contract giving rise to damages. In our judgment, the contention of the defendants in this respect is unsound. It is said in the original complaint that the ditch in question was duly located, surveyed and established over and within the land of the plaintiff. The allegation of the second complaint is substantially the same. The effect of the two pleadings is identical. Both plainly point out that the bone of contention is the earth which was dug out of the ditch. The court was clearly within the bounds of its discretion in allowing the amendment before trial, as described in Section 102, L. O. L., reading thus:

"The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of the party, or other allegation material to the cause; and in like manner and for like reasons it may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or a mistake in any other respect, or when the amendment does not substantially change the cause of action or defense, by conforming the pleading or proceeding to the facts proved."

2–4. The important assignment of error relied upon by the defendants is found in their objection to various parts of the charge of the court to the jury. In substance the instructions challenged are that, whatever the necessity in the construction of the ditch, the defendants had no right to throw the excavated earth upon the west side thereof and beyond the plaintiff's line unless the original plan of drainage adopted by the

district directed that the earth should be thus deposited, and further, that although the original plan designated the west side of the ditch as the place to put the excavated earth, yet the jury had a right to consider whether or not it was necessary so to do, and to what extent it was requisite. In other words, the effect of the instructions was to submit to review and revision by the jury the judgment of the district and its engineer exercised in the construction of the ditch.

The formation of drainage districts had its origin in Chapter 340 of the Laws of 1915, entitled "An act to provide for the organization of drainage districts, for the construction, operation and maintenance of drainage systems, for the payment of the cost of such systems and the expenses incidental thereto." The organization of such a body is inaugurated by filing in the office of the county clerk a petition signed by the owners of 50 per cent of the acreage of swamp, wet, overflowed or irrigated lands included in the proposed district. After certain preliminary procedure, three supervisors are elected. They then appoint an engineer, who shall have control of the engineering work in the district. The act, Section 8, requires that:

"The said engineer or engineers shall make all necessary surveys of the lands within the boundary lines of said district, as described in the petition, and of all lands adjacent thereto that may be or will be improved or reclaimed in part or in whole by any system of drainage or levees that may be outlined and adopted, and said engineer or engineers shall make a report in writing to the board of supervisors with maps and profiles of said surveys, which report shall contain a plan for draining and reclaiming the lands described in the petition or adjacent thereto from overflow of or damage by water; said maps and profiles shall also indicate so far as necessary the physical characteristics of the lands, and location of any public roads, railroads

and other rights of way, roadways and other property or improvements located on such lands. * * Upon receipt of the final report of said engineer concerning surveys made of the lands contained in the district organized, and plans for reclaiming the same, the board of supervisors shall adopt such report or any modification thereof approved by the chief engineer and thereafter such adopted report shall be the plan for draining and reclaiming such lands from overflow or damage by water, and it shall after such adoption be known and designated as 'the plan for reclamation,' which plan shall be filed with the secretary of the board of supervisors and by him copied into the records of the district.''

The County Court is required to appoint three commissioners possessing certain qualifications. Equipped with a copy of the plan and list of lands involved, they inspect the district and the lands therein and assess the benefits and damages accruing to each tract. Their report is filed with the County Court and opportunity to be heard in objection to the report is afforded by published notice. After considering all objections and exceptions, if the County Court is satisfied that the estimated cost of the improvement is less than the benefits to be derived therefrom, it shall approve and confirm the commissioners' report as amended or modified. Anyone aggrieved may appeal from the judgment of approval. The act then empowers the supervisors ''to build, construct and complete all or any works and improvements which may be needed to carry out 'the plan of reclamation,' to hire men and teams, and to purchase equipment and supplies.'' These notations respecting the provisions of the drainage district law are taken from the act already mentioned and the amendments thereto found in Chapter 414 of the Laws of 1917.

One of the contentions of the plaintiff, which seems to have been adopted by the court, is that the plan must specify that the earth taken out of the ditch is to be deposited upon the west side; for want of which the defendants would be guilty of wrong to the plaintiff in putting it there. In our judgment, no such meaning can be predicated of the term "plan" as used in the act. "Plan" contemplates "the representation of anything drawn on a plane, as a map or chart": Standard Dictionary. In other words, it is a map. It does not include the delineation of cross-sections or elevations. It has to do with the length and direction of the ditches designed to effect the drainage desired. It is not contemplated by the act that the plan shall include particular and minute specifications about where each spadeful of earth shall be deposited. These things must be left in practice to the governmental discretion of the officers of the drainage district. The district, operating through its supervisors, is a branch of governmental power the exercise of which is designed to accomplish results beneficial to at least a portion of the public, the land owners whose property is advantageously affected by the project. In the absence of fraud, their plan as approved by the judicial examination of the county court is not to be called in question or reviewed collaterally by any other tribunal. Much less is it to be left to the judgment of a trial jury in an action for damages. The principle is well stated in the opinion of Mr. Justice MOORE in *Giaconi* v. *Astoria,* 60 Or. 12, 19 (113 Pac. 855, 37 L. R. A. (N. S.) 1150), thus:

"A municipal corporation in devising plans for improving public highways within its borders acts judicially, and when proceeding in good faith is not liable for errors of judgment; but in constructing the work it acts ministerially, and is bound to see that the

plan is executed in a reasonably safe and skillful manner''; citing authorities.

The question there involved was the grading of a street, but the principle is the same in the instant case, for in both situations there is involved the exercise of governmental authority.

It is true, as contended by the plaintiff, that:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in case of the state, without such compensation first assessed and tendered'': Oregon Constitution, Article I, Section 18.

This condition is met and satisfied in the case at bar by the statement at the trial by the plaintiff's counsel to the effect that the defendants had a right to construct the ditch. What the plaintiff's attorney said was in legal effect an admission that the land had been legally condemned and the matter of compensation properly adjusted by judicial proceedings or agreement of the parties. Under the constitutional guaranty above noted the defendants would have no right to invade the premises of the plaintiff and construct the ditch until the matter of compensation was first adjusted. We have, then, a case where the defendants are justified in taking the plaintiff's property so far as it is involved in the construction of the ditch.

Under Section 16 of the original act, the supervisors have full power and authority to build, construct and complete all or any works or improvements which may be needed to carry out the plan. The fallacy of the plaintiff's argument, seemingly adopted by the court, lies in the apparent assumption that a drainage ditch is constructed solely by excavation. This is not always the case. Such construction may often include filling as well as excavation. Anyone with practical

knowledge of the subject may readily see as an illustration that a ditch on a steep side-hill will consist very largely of an embankment on the lower side. The dirt is never piled on the upper side in such cases. And in this instance, the levee formed by the deposit of the earth on the west side probably was designed to prevent the flood waters going beyond the ditch to inundate the lower lands in that direction. In other words, it was most likely intended as a reinforcement of the ditch.

Having in mind the objects to be obtained and the benefits to be acquired by the project, much must be left to the judgment of the district officers, acting in their governmental capacity in carrying out the original design or plan. They are not here charged, as in the Giaconi case, with having acted negligently. Neither is fraud imputed to them. Giving it full effect in favor of the plaintiff, the most that is alleged is that in their judgment the proper place to deposit the earth was on the west side of the ditch. That they had a right to use the earth acquired in the excavation for the purpose of completing its construction is taught by the opinion of Mr. Justice McBride in *Sharkey* v. *Portland,* 58 Or. 353 (114 Pac. 933). The matter involved in that case was the grading of a street. It is there said:

"The weight of authority seems to be that the city is entitled to use the earth excavated from one portion of a street to make fills required upon the same street, or upon other streets embraced in the same general plan of improvement."

The subject is treated at length in *Hamby* v. *Dawson Springs,* 126 Ky. 451 (31 Ky. Law Rep. 814, 104 S. W. 259, 12 L. R. A. (N. S.) 1164), and particularly in the note in the latter publication.

We may safely say that in making an improvement of the kind in question the public authorities have a right to use the material found in the ditch for the completion of that particular work, and that, in the absence of fraud or negligence, they are not liable for the consequent injury which may happen to the land owner. These questions are properly to be worked out and concluded in condemnation proceedings. Once given the right to construct the ditch, they have full power and authority, as declared in the statute, to do those things which are proper for the accomplishment of the work in hand. The analogy of street grading cases holds good in one of the sort before us. The action of the officers within such limits, that is, without negligence or fraud, is not subject to collateral review by a jury. If by the fair exercise of their judgment the officers of the district determined that it was necessary to put six thousand cubic yards of excavated earth on the west side of the ditch as a levee in aid of the reclamation project, the jury in such a case as this cannot be permitted to question their decision or to say that less or more or none of the earth should have been there deposited. In this respect the instructions were erroneous. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.