KIDWELL et ux. *v.* BAY SHORE DEVELOPMENT CORPORATION et al.

[No. 38, September Term, 1963.]

578

*Decided November 8, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Harry H. Cropper,* with whom was *William G. Kerbin, Jr.,* on the brief, for the appellants.

*Daniel T. Prettyman* for the corporate appellee.

*Marcus J. Williams* for the municipal appellee.

PRESCOTT, J., delivered the opinion of the Court.

Complainants below, who were awarded damages by a court of equity for injury to their real estate by surface water, have appealed, because they were denied injunctive relief against the City defendant and the corporate defendant, and they believe the amount of the award of damages is too small.

The record extract is lengthy, but the essential facts will be stated as concisely as possible. Appellants are the owners of a parcel of land in Ocean City, located at the northwest corner of the intersection of Ocean Highway (also known as Phila-delphia Avenue, and hereafter called "the Highway") and North 31st Street (31st Street), which is improved by a 25-unit motel. The property has a frontage on the Highway of 150 feet and a depth along 31st Street, its southern boundary, of 210.4 feet. It is bounded on the west by a 16-foot alley (which extends north an additional 150 feet where it intersects North 32nd Street [32nd Street]), and on the north by property in private ownership.

The Highway runs roughly in a north-south direction, is 120 feet wide and paved for its entire width. Its easterly line is some 2½ feet higher in elevation than its westerly line. Where the westerly line intersects the center line of 32nd Street, the

elevation is 7.4 (all elevations are in feet above mean low water level) and it descends gradually in a southerly direction to 6.7 at its intersection with 31st Street.

In 1953, prior to any improvement of appellants' property, the land in the area west of the Highway had an elevation of 2.7; at the easterly line of appellants' parcel, it was a little higher. This topography produced a natural drainage of surface waters in a southwesterly direction from the Highway across appellants' land to the Sinepuxent Bay, located some 300 feet west of the Highway.

In 1953, appellants' predecessors in title filled in the lot to an elevation of 6.4 in the front and 5.2 in the rear. Between the front and the back, where the motel (or a portion thereof) was built in 1953, the elevation was raised to 7.4, and some of the surface water continued to flow in a southwesterly direction, but some of it was diverted so as to flow away from the motel in a northerly direction. At the southerly line, the waters were led into pipes placed in cement curbs and thence drained into 31st Street, a "paper" street, which retained its original elevation until the spring of 1961. At the north line, the waters were led by a pipe across adjacent property and emptied in a slough located near the northwest corner of appellants' land. The 16-foot alley at the rear was also an unimproved "paper" alley.

In 1957, the appellants purchased the property, and in 1959, the corporate limits of Ocean City were extended so as to include the same. In April, 1961, after obtaining permits from the Defense Department and Ocean City, the Bay Shore Development Corporation (Bay Shore), the owner of the land south of 31st Street and west of the 16-foot alley, began an extensive land-fill operation designed to extend some 4000 feet into the Bay. As a preliminary step, Bay Shore erected sand dikes, some three feet higher than the elevation of appellants' property, a portion of said dikes extending along the south and west boundaries thereof and along the westerly 40 feet of the northerly property line. The hydraulic land-fill process was utilized: a dredge was stationed in the Bay and fill material and water were pumped through pipes to the site of the fill. The fill was started to the south of appellants' property, and then

proceeded in a northerly direction, passing to the rear thereof, to 32nd Street.

There was testimony to the effect that the sewage from appellants' motel was disposed of by two septic tanks connected to drain fields located on their property, and these tanks were rendered inoperative by reason of the dredging operation. In the latter part of May, 1961, one of the appellants complained to the Mayor and Council of Ocean City. As a result, the Mayor and City Clerk visited the property, and a contractor was employed by the City to level the dike along appellants' southerly line. This contractor did so and water from the fill flooded over appellants' property. Bay Shore's employees diverted the water in the fill so that this particular flooding, according to Bay Shore, was not of an extended nature. The appellants contend that thereafter, in June of 1961, when the fill operation was being concentrated adjacent to their northwesterly corner, water from the fill came around the dike at their southwesterly corner and flooded the rear of their land.

The appellants claim they were put to considerable expense in attempting to maintain the septic tanks in working condition. At the time of the hearing, they had installed a sump pump, which with the assistance of a pipe, conveyed the effluent in a northwesterly direction to an open ditch, which had been dug by the City.

The dredging operation ceased in September, 1961, at which time the appellants claim the drainage of the surface waters from their property had "completely stopped" due to the raising of the elevation of the land to the south, west and north of it.

Suit requesting injunctive relief and money damages was initially instituted by the appellants against Bay Shore. Bay Shore impleaded the City as a third party defendant, and the City filed an answer to the original complaint. A hearing was held, and the Chancellor denied injunctive relief, but awarded monetary damages against both defendants. The complainants below, alone, have appealed.

## I

We first consider the refusal by the Chancellor to grant in-

junctive relief against the City defendant. This ruling was correct for several reasons; we need mention but one. We fail to find in the pleadings any request for an injunction against the City. When Bay Shore, the original defendant, impleaded the City as a third party defendant, the plaintiffs did not amend their bill of complaint, assert a claim in a separate pleading, nor did they assert a counterclaim. Maryland Rules 315 d 1, 370 a 4. And we find nothing in the record extract (although it contains 212 pages) to show that plaintiffs, at any time, filed a petition for an injunction. Maryland Rule BB77. Hence the Chancellor's refusal of injunctive relief against the City was correct. Maryland Rule 315 e 2.

## II

We proceed to a consideration of his denial of injunctive relief against the corporate defendant. Both sides have suggested that the facts of this case call for an application of the "reasonableness-of-use" (also called "reasonable-use" by some Courts and text writers) doctrine, and we agree.

There can be little doubt but that Maryland, traditionally and historically, has been a civil-law State regarding natural surface waters. *Baltimore & S. P. R. Co. v. Hackett,* 87 Md. 224, 39 A. 510; *Biberman v. Funkhouser,* 190 Md. 424, 58 A. 2d 668; *Hancock v. Stull,* 206 Md. 117, 110 A. 2d 522; *Battisto v. Perkins,* 210 Md. 542, 124 A. 2d 288; *Baltimore County v. Hunter,* 207 Md. 171, 113 A. 2d 910; *Sainato v. Potter,* 222 Md. 263, 159 A. 2d 632, and cases therein cited. The civil-law rule, simply stated, is that land upon which surface water *naturally* flows from another tenement is regarded as subject to a servitude of receiving such flow, and consequently, the owner thereof has no right, by any erection or improvement, to prevent the escape thereon of water from the higher land. 3 Tiffany, *Real Property* (3 ed.) § 743. And this Court has held that the rule applies to urban as well as rural lands. *Battisto v. Perkins, supra.*

However, this Court has recognized that a strict and rigid adherence to the civil-law rule, in some cases, works undue hardship upon one or more of the parties; and has applied the reasonable-use doctrine. *Whitman v. Forney,* 181 Md. 652, 31

A. 2d 630; *Hancock v. Stull; Baltimore County v. Hunter; Battisto v. Perkins; Sainato v. Potter,* all *supra.* The application of this doctrine does not change the adopted rule of law, but provides mitigation from harsh results which may be reached by a strict application thereof. It depends upon the facts of each particular case, is peculiarly appropriate for an equity court to follow, and, in cases where undue hardship will ensue to one or the other of property owners by a rigid application of the civil-law rule, it has the advantage of flexibility, whereby the rights of the respective owners may be equitably determined by an assessment of all the relevant factors relating to the disposition of surface waters. We note that there seems to be a trend by the Courts toward a more frequent application of the rule. See the cases collected in an annotation in 59 A.L.R. 2d 421, §§ 4, 6 and 7. And compare Restatement, *Torts,* § 833.

A careful examination of the facts in the case at bar reveals some unusual aspects. Two of the boundaries of appellants' lot (the south and west) are unimproved city streets, with the grades thereof set by the City; and, after the City granted Bay Shore permission to fill 31st Street and the alley to that grade, Bay Shore, at least partially, did so. There was testimony to the effect that the City filled in, or partially filled in, the raise in grade on 31st Street. However, whether this was done by the City or Bay Shore, it seems apparent that all that was done down to the time of the hearing was for the benefit of Bay Shore, the City having, at that time, set no time for the improvement of 31st Street or the alley (31st and 32nd Streets and the alley were still unimproved at that time). The City has plans, recommended by an engineer, to provide for the disposal of the surface drainage from appellants' property by storm drains and catch basins, when, and if, it improves 31st and 32nd Streets and the alley. There have been no dredging operations for a considerable period of time. However, appellants, at present, are in a situation where it is impossible to dispose of the surface water on their property, except at a very large expense, and the backing up of the surface water prevents the proper functioning of the septic tanks. True, their lot was not graded to the 7.4 plus level, the now generally accepted

grade for property west of the Highway in the area, but when their lot was raised, it was not a part of the City and it is not shown that a grade had then been established.

On the other hand, Bay Shore will be placed at a decided disadvantage, if it be denied the use of its property at the grade established by the City. If it be forced to utilize it at a grade in relation to the grades of 31st and 32nd streets and the alley that fails to conform to established business practices, the economic loss will be substantial.

In addition, the case reached a hearing date below at a most inopportune time. We shall not repeat all of the physical aspects of the respective properties as they have been outlined above. The hearing was held on April 17 and 18, 1962. In March of that year, Ocean City had experienced one of its worst storms in history, and property and business, generally, were in a disrupted and confused condition. The record discloses two large masses of sand piled up by the storm on 31st Street. The hearing below was conducted more than a year and one-half ago. At that time, the City had under consideration the possibility of constructing the storm sewers and catch basins, so as to carry off the surface drainage of appellant's property. The record before us, of course, does not reflect what, if anything, has since been done in this regard, or in regard to any other aspect of the case.

Under the above circumstances, we shall reverse that part of the decree which denied injunctive relief against Bay Shore, to the end that the Chancellor (in the event that the parties are unable satisfactorily to solve the problems themselves) may take additional testimony. Such testimony shall include all evidence offered by the parties that pertains to relevant elements and factors concerning a reasonable use of appellants' property by them and a reasonable use of Bay Shore's property by it, said uses to provide for a proper disposition of the surface water flowing from appellants' property (until such time as the City improves 31st and 32nd Streets and the alley and/or takes over the surface drainage problem). The Chancellor shall determine the best mode of this disposition, and the reasonable and just amount of the expense thereof to be borne by the appellants and by Bay Shore. After the taking of testimony and

making the above determinations, the Chancellor shall pass his decree. The decree shall contain the conditions required of the appellants and of Bay Shore, and shall contain an injunction against Bay Shore from obstructing the surface water flowing from appellants' property, said injunction, however, to be conditioned upon a compliance by the appellants with the conditions required of them, and a failure by Bay Shore to comply with the conditions required of it. Relief of a similar nature was granted in *Hancock v. Stull,* and *Baltimore County v. Hunter,* both *supra.*

We noted above that appellants diverted some of the natural surface waters from a southwesterly course to a northerly one. We also noted that they had channeled that flowing in a southwesterly course. Bay Shore asserted no serious harm to it from either of these sources; however they are factors which should be weighed and considered by the Chancellor, together with other relevant elements, in determining the rights and obligations of appellants and Bay Shore.

We do not intimate that Bay Shore has any obligation to receive upon its property, or to pay any portion of the expense of controlling, the effluent from appellants' septic tanks. *Baltimore County v. Hunter, supra.* Nor, under the present state of the proceedings, do we express any opinion as to the duties of the City in changing the grades of its streets.

### III

This brings us to the question of damages. Appellants listed work and materials for septic tank and drains, cleaning rugs, maintenance of a ditch, resurfacing of driveways and parking areas, repairing walls and furniture, replacing bureaus, carpet, bedsprings and mattresses, and loss of income as separate items of damages suffered by them. The Chancellor entered a money decree against both defendants for $2,079.41, but the complainants were dissatisfied with the amount thereof, and appealed. Since there was no cross-appeal by either defendant, it is obvious that the award must be affirmed, unless we find the action of the Chancellor in making the award was clearly erroneous in that it was too small.

We find it unnecessary to consider, separately, each item of

alleged damages. The Chancellor, with two exceptions, was not satisfied with the sufficiency of the complainants' evidence to prove compensable damages. After a careful reading of all the evidence, we are unable to say that his conclusion was clearly wrong. The value of the claimed losses, for the main part, lacked much in regards to reasonable accuracy; and, in other instances, there was a failure to show reasonable probability of causal connection.

The Chancellor allowed appellants $1,364.91 for materials and labor "in altering the septic tanks and drains," and $714.50 for damages to the driveways and parking area and, again, we cannot conclude that he was clearly in error. The award for materials and labor for altering the septic tanks and drains was nearly what the complainants asked for, *i.e.,* $1,412.73. In making his calculation for this item, the Chancellor simply found that complainants had failed to prove all of the losses they claimed at first. In regard to resurfacing the driveways and parking area, there was evidence to the effect that the replacement cost would be $2,858. Bay Shore offered testimony tending to show that no action on its part had caused damage to the driveways or parking area. There was also evidence showing that they had been laid for a considerable period of time. Judge Child said: "Considering the length of time the present surface has been laid, the Court finds that one-fourth" of the $2,858 "is the amount of damage to the driveways and parking area." He saw and heard the witnesses and we are inhibited from disturbing his findings of fact unless they are clearly erroneous. Maryland Rule 886 a. We hold that the evidence supported his conclusion.

> *Decree affirmed insofar as injunctive relief against the City was denied, and monetary damages awarded against both appellees. Decree reversed insofar as injunctive relief against Bay Shore was denied, and cause remanded for further proceedings in conformity with this opinion. Each party to pay his, her or its costs.*