HANCOCK ET UX. *v.* STULL

[No. 65, October Term, 1954]

118 

*Decided on January 13, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, HENDERSON, and HAMMOND, JJ.

*Robert W. Beall,* for appellants.

*Thomas S. Jackson,* with whom was *Louis M. Denit,* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

The decision in this appeal should ring down the last act curtain in a drama of quarrelling neighbors. The actors who were here in the first act, reviewed in *Hancock v. Stull,* 199 Md. 434, appear now in the same roles.

The setting of the drama, revealed by the opinion in the prior appeal, is that the appellants are the owners of a lot of ground in Chevy Chase immediately to the east of, and higher than the lot of the appellee. The natural slope of the appellants' property is from south to north and from east to west. The appellants built their house towards the front, or northern, part of the whole lot and graded up around it. As a result a gully or ditch was created about half-way between the southern and northern boundaries, running from east to west and channelling the flow of surface water onto the lot of the appellee to the west. The appellee built a concrete wall ninety feet long and eighteen inches high all along

the common boundary line of the two lots. This caused the appellants to bring a bill in equity to enjoin interference "with the natural drainage of surface water" and specifically to require removal of the wall. The chancellor denied all relief on a finding that the appellants were at fault in artificially changing the natural flow of the surface water, so as to channel it onto the land of their neighbor.

This court reversed the action of the chancellor and remanded the case, saying at page 440 of 199 Md.: "If plaintiffs have done wrong, the Court should decided what the wrong is and what is the remedy and should not deny plaintiffs all relief, but should condition appropriate relief to plaintiffs (including removal of the wall) upon appropriate rectification by plaintiffs of their own wrongdoing." This direction to the trial court mirrored succinctly the holding of the cases cited in the opinion, which lay down the Maryland rule and its qualifications. The rule is that the owners of land are entitled to have surface water flow naturally over the land of the lower landowner and the lower owner cannot obstruct the running of the water from the higher land onto his own. *Whitman v. Forney,* 181 Md. 652. Pertinent qualifications are that the upper owner has no right to discharge water into an artificial channel, or in a different manner than the usual and ordinary natural course of drainage, or put upon the lower landowner water which would not have flowed there if the natural drainage conditions had not been disturbed. If water is unlawfully forced on the lower owner, he is entitled to protect his property from the unwarranted flow. *Biberman v. Funkhouser,* 190 Md. 424, 429.

In cases where a strict application of the general rule would result in hardship: "Courts have sometimes adopted what might be called a 'reasonableness of use' rule. That rule is based upon the facts in a particular case and is peculiarly appropriate for an equity court to follow." *Bishop v. Richard,* 193 Md. 6.

The appellee, after the remand, filed a cross-bill alleging the creation of the gully or ditch by the appellants and its effect in channelling water onto her land. She produced two witnesses who had long years of experience in construction work and in the drainage of building sites, who substantiated her allegations on both points. The appellants did not contradict the positive testimony as to the artificial focusing of the water onto the land of the appellee, but limited testimony on their side to minimizing the width and depth of the gully or ditch and to showing the effect of the concrete wall in damming up water on their land.

After the original decision of the chancellor, the appellants signed and filed a petition for rehearing, which was included in the record here in the first appeal and which has been reprinted, in part, in the appendix of the appellee in this appeal. The chancellor had suggested that a civil engineer be consulted to determine what was necessary to correct the conditions giving rise to the trouble. In the petition, the appellants say in response that their attorneys had discussed the problem with the county surveyor, who had viewed the property and made a survey, after which he had prepared a preliminary sketch: "suggesting that approximately twenty to twenty-five feet of the northern section of the wall erected by the defendants be removed and a valley gutter of approximately two feet in width installed along the common property line * * *." The petition further alleged that the appellee was unwilling to settle the dispute on any basis which required the removal of any part of the wall, but that the appellants were willing to follow the suggestion of the county surveyor and to pay one-half of his fee and one-half of the cost of the construction of the valley gutter.

The chancellor had viewed the property on two occasions and this Court, in the first opinion, said: "We should be slow indeed to differ with him on a finding of fact." In reaching a second decision, the chancellor found as facts: "* * * the plaintiffs' house was built too low.

With the grade coming down from the South to its rear and from the East to its right, they had to grade down to the rear from the house to prevent flooding. When they did this, where the grade away from the house met the natural grade, it formed a ditch or gully that concentrated the natural surface water and the dirt from cultivation, and discharged them directly on the defendant." His answer to the problem was this: "The plaintiffs offer a solution that should remedy the difficulty. It is the one suggested by the County Surveyor: a removal of part of the wall and the construction of a valley gutter of approximately two feet wide along the common property line, one-half to be on each, and the plaintiffs to pay the cost thereof as their grading and cultivation caused the necessity. In the event the defendant is unwilling to accept this proposal, the Court will pass an order requiring the removal of the wall." The final decree adopted this solution.

Again, we would be slow to differ with the finding of fact of the chancellor. We think he was entitled to rely on the opinion of the county surveyor as to an appropriate and equitable method of solving the mutual problem of the neighbors, weighed in the light of his own knowledge of the terrain involved, both from previous and current testimony and his personal inspection. We find nothing in the case to suggest that there was error in the decree he passed.

*Decree affirmed, with costs.*