## BAER ET UX. *v.* BOARD OF COUNTY COM-MISSIONERS OF WASHINGTON COUNTY

[No. 384, September Term, 1968.]

*Decided October 9, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Kenneth J. Mackley,* with whom were *Ottinger, Mackley & Gilbert* on the brief, for appellants.

*James F. Strine* for appellee.

SINGLEY, J., delivered the opinion of the Court.

In 1966, Mr. and Mrs. Baer bought a lot on Woodburn Drive in Orchard Grove, a residential district north of Hagerstown. After they completed construction of a house on the lot, they discovered that surface water was accumulating in their rear yard after heavy rains. Convinced that this condition was caused by drainage pipes which the Board of County Commissioners of Washington County (the County) had installed in 1958, the Baers sought injunctive relief in an action brought against the County in the Circuit Court for Washington County. From an order dismissing their bill, the Baers have appealed.

The facts of the case could be more readily understood had the Baers taken the trouble of introducing into evidence a map capable of reproduction here. From the tes-

timony and the exhibits, it would appear that the lot which the Baers bought is on the west side of Woodburn Drive at the intersection of Blue Ridge Road, in an area lying generally east of a local country club, the club having located there before development of the adjoining residential area was commenced. The land falls gradually from the country club in the direction of Woodburn Drive and the Baer lot. Immediately to the rear of the Baer lot (but separated from the Baer lot by a 20 foot reservation, retained by the developers for a possible future alley) is a lot owned by William E. Beyard, fronting on Fountain Head Road, a road which parallels Woodburn Drive and lies generally to the west. On the west side of Fountain Head Road, opposite the Beyard lot, is property now owned by Arnold D. Staubs.

Sometime after 1950, when Fountain Head Road was laid out, water flowing from the country club property toward the east commenced to accumulate on the property now owned by Staubs. There is no dispute that the County alleviated this condition by installing a pipe under Fountain Head Road, so that the water was discharged on the lot now owned by Beyard. When Beyard built his house in 1956, he extended the pipe across his lot in a generally easterly direction toward the lot now owned by the Baers.

In about 1958, after water again commenced to accumulate on the Staubs property, the County installed two catch basins on the west side of Fountain Head Road, and two additional catch basins on the east side of Fountain Head Road appear to have been installed by Mr. Funkhouser, whose lot adjoins Beyard's. The County then removed Beyard's pipe, and installed two pipes which run along Beyard's northeasterly lot line and terminate at the 20 foot strip between the Beyard and Baer lots. Through these pipes apparently runs the water from the catch basins and the Staubs property.

Baer testified that when he purchased the lot in 1966, it was heavily wooded. He was aware of the drainage problem, but when he examined the lot after heavy rains,

he saw no accumulation. Incident to the construction of the Baer house, some trees and underbrush were removed, and substantial quantities of water commenced to accumulate after heavy rains along Baer's rear lot line, and slowly drained into Woodburn Drive at a low point at the southeast corner of Baer's lot.

The purpose of the Baers' suit was to enjoin the County from discharging water from the two pipes which empty at the 20 foot reservation along their rear lot line. The parties stipulated that the owners of the reservation would permit the County to extend the pipes along the reservation to the southwestern boundary of the Baers' property. The Baers would permit the County to run the pipes to the southeastern corner of their lot and empty into Woodburn Drive. This solution was aborted when the lower court dismissed the Baers' bill of complaint.

On appeal, the Baers concede that an owner of lower land cannot obstruct the natural flow of surface water from higher land but argue that the chancellor, in denying relief because there was no evidence of "increased flow" or "change of flow," failed to take into account the undisputed evidence that by installing the pipes, the County had canalized or concentrated at one point on the Baers' lot, water which might never have reached the lot by natural flow.

In *Philadelphia, Wilmington & Baltimore R.R. Co. v. Davis*, 68 Md. 281, 11 A. 822, 6 Am. St. Rep. 440 (1888) this Court aligned itself with the American states which had adopted the civil law rule with respect to surface waters:

> "[T]hat the owner of the upper land has a right to the uninterrupted flowage of the water caused by falling rain and melting snow, and that the proprietor of the lower land, to which the water naturally descends, has no right to make embankments whereby the current may be arrested and accumulated on the property of his neighbor. This is the rule of the civil law, ap-

parently founded on the principles of justice, and said to be 'received with constantly increasing favor in the United States.' [citing cases]." 68 Md. at 289.

It has been suggested that the rule follows the common law maxim regarding water courses: *Aqua currit et debet currere, ut currere solebat.*[1] For a consideration of the civil law and common law rules and the almost equal division of authority see 6A *American Law of Property* § 28.63 (A.J. Casner ed. 1954) at 188 and Kinyon and McClure, *Interferences with Surface Waters,* 24 Minn. L. Rev. 891 (1940).

The later Maryland cases have consistently applied the civil law rule. *Baltimore & Sparrows Point R.R. Co. v. Hackett,* 87 Md. 224, 39 A. 510 (1898); *City Dairy Co. v. Scott,* 129 Md. 548, 100 A. 295 (1916); *Neubauer v. Overlea Realty Co.,* 142 Md. 87, 120 A. 69 (1923); *Eisenstein v. Annapolis,* 177 Md. 222, 9 A. 2d 224 (1939); *Whitman v. Forney,* 181 Md. 652, 31 A. 2d 630 (1943); *Biberman v. Funkhouser,* 190 Md. 424, 58 A. 2d 668 (1948); *Bishop v. Richard,* 193 Md. 6, 65 A. 2d 334 (1949); *Hancock v. Stull,* 206 Md. 117, 110 A. 2d 522 (1955); *Baltimore County v. Hunter,* 207 Md. 171, 113 A. 2d 910 (1955); *Battisto v. Perkins,* 210 Md. 542, 124 A. 2d 288 (1956); *Kennedy-Chamberlin Dev. Co. v. Snure,* 212 Md. 369, 129 A. 2d 142 (1957); *Sainato v. Potter,* 222 Md. 263, 159 A. 2d 632 (1960); *Kidwell v. Bay Shore Dev. Corp.,* 232 Md. 577, 194 A. 2d 809 (1963). *See also* Note, *Drainage of Surface Waters Under the Civil Law Rule as Applied in Maryland,* 11 Md.L.Rev. 58 (1950).

Beginning in 1943 with the opinion in *Whitman v. Forney, supra,* and repeated in 1948 in *Biberman v. Funkhouser, supra,* what began as an intimation that the civil law rule should be qualified by reasonableness has

1. Water runs, and ought to run, as it has used to run. 3 Kent, *Commentaries* (14th Ed. 1896) at 439; cited in *Kauffman v. Griesemer,* 26 Pa. 407, 413, 67 Am. Dec. 437 (1856).

developed into a limitation which is a rule of law in all but name: *Hancock v. Stull; Battisto v. Perkins; Kennedy-Chamberlin Dev. Co. v. Snure; Sainato v. Potter,* all *supra;* Note, *Maryland Surface Waters—A Critical Analysis,* 18 Md.L.Rev. 61 (1958). As the Court said in *Kidwell, supra:*

> "There can be little doubt but that Maryland, traditionally and historically, has been a civil-law State regarding natural surface waters. [citing cases]. * * *
>
> "However, this Court has recognized that a strict and rigid adherence to the civil-law rule, in some cases, works undue hardship upon one or more of the parties; and has applied the reasonable-use doctrine. [citing cases]. The application of this doctrine does not change the adopted rule of law, but provides mitigation from harsh results which may be reached by a strict application thereof. It depends upon the facts of each particular case, is peculiarly appropriate for an equity court to follow, and, in cases where undue hardship will ensue to one or the other of property owners by a rigid application of the civil-law rule, it has the advantage of flexibility, whereby the rights of the respective owners may be equitably determined by an assessment of all the relevant factors relating to the disposition of surface waters. * * *" 232 Md. at 583-84.

Onto the civil law rule our decisions have engrafted a "reasonableness of use" test, where a balance of benefit and harm is struck in hardship cases, to make sure that the owner of the servient estate is not unreasonably denied use of his property.

Most writers regard the reasonableness of use rule, adopted as such only in New Hampshire [2] and Minne-

---

2. *Swett v. Cutts,* 50 N. H. 439, 9 Am. Rep. 276 (1870).

sota,[3] as differing from both the civil law and common law rules, 24 Minn.L.Rev., *supra*, at 904, but the reasonableness test finds support in Restatement, *Torts* (1939) § 833 b. While our later cases emphasize that an artificial increase or concentration of surface water will be deemed unreasonable if damage results, 21 Md.L.Rev. 88 (1961), this seems to have been recognized as a ground for relief even before reasonableness was a test. *Lion v. Baltimore City Pass. Ry. Co.*, 90 Md. 266, 44 A. 1045 (1899).

We think that the appellants' reading of our prior decisions is the correct one. Evidence of increased flow or change of flow which the chancellor said was absent from the case before him is not the only ground on which relief may be postulated; a concentration of flow, or the introduction of artificial means of flow, even without change in direction, may justify judicial intervention if it is unreasonable and hardship results.

The unusual feature of this case is the fact that three properties are involved: Staubs', on the highest elevation, was the dominant estate; Beyard's, lower than Staubs', but higher than the Baers', was servient vis-à-vis Staubs', but dominant as regards the Baers'; and the Baers' was servient as to Beyard's.

While the testimony is not entirely clear on this point (and in the posture of the case before us, this would seem to be of no consequence) it would appear that Beyard, when he built his house in 1956, had extended the pipe previously placed under Fountain Head Road by the County, so that the water which had been accumulating on Staubs' lot was discharged, not on the front of Beyard's lot, but somewhere farther to the rear. In 1958, the County, with Beyard's consent (he testified that he had granted the County a 10 foot drainage easement) apparently removed Beyard's pipe and installed two pipes which carried the water from Staubs' lot and from Fountain Head Road across Beyard's lot and discharged

---

3. *Bush v. City of Rochester*, 191 Minn. 591, 255 N. W. 256 (1934).

it at the rear of the Baers' lot. It is clear that Beyard was required to accept this water as long as Staubs and the County acted reasonably. *Kennedy-Chamberlin Dev. Co. v. Snure, supra,* 212 Md. at 376.

The Baers are obviously correct when they say that this concentrated water on their lot which they might never have been required to take had the pipes not been installed. The fact that the direction of flow may have been left undisturbed is not the controlling circumstance; it is the fact that the County canalized the water in pipes which were by their very nature impervious, so that the Baers were deprived of the natural process of absorption and diversion which might have taken place had the water flowed across the surface of Beyard's lot.

In *Sainato v. Potter, supra,* one of the more recent cases involving surface waters, Judge (later Chief Judge) Prescott succinctly stated the rule of the cases:

> "This Court has consistently held that the civil law rule, and not the common-law rule, regarding surface waters applies in Maryland; that is, the owner of higher land is entitled to have surface water flow naturally onto the lower land of an adjoining landowner. [citing cases]. And the lower landowner cannot obstruct the running of natural surface waters onto his land from that of the higher owner. [citing cases]. This rule is however, subject to the important limitation that the higher landowner cannot artificially collect surface water and discharge it at one point over the lower land, so as to injure it, nor can he precipitate it in greatly increased or unnatural quantities upon his neighbor below to the substantial injury of the latter. [citing cases].
>
> "In cases where a strict application of the general rule would result in hardship upon either the higher or lower landowner, Courts have recognized what is termed a 'reasonable-

ness of use' rule. An application of this rule creates no precedent, nor does it change the adopted rule of law. It is based upon the facts of a particular case, and provides mitigation for the harsh application of the general rule. This Court has recognized the rule on several occasions. [citing cases]." 222 Md. at 267-68.

Under our prior decisions, the Baers should have been granted the injunctive relief which they sought, in a form, to be sure, which gave the County the option of removing the pipes which it had installed in 1958 from Beyard's front lot line to the 20 foot reservation at the rear of the Beyard lot, or alternatively of extending the pipes along the reservation and into Woodburn Drive. Since further testimony may be required for the framing of an appropriate decree, the case will be remanded.

As both sides were apparently unable to adjust the matter and have stood on what each supposed to be its rights, it seems fair that each side should pay its own costs. *Whitman v. Forney, supra,* 181 Md. at 661; *Biberman v. Funkhouser, supra,* 190 Md. at 430; *Baltimore County v. Hunter, supra,* 207 Md. at 183.

> *Reversed and remanded for the entry of a decree in conformity with this opinion; each side to pay its own costs on appeal.*