EUGENE C. BEANE, SR. ET UX. *v.* PRINCE GEORGE'S COUNTY, MARYLAND

[No. 346, September Term, 1973.]

*Decided March 8, 1974.*

384

The cause was argued before THOMPSON, MOORE and LOWE, JJ.

*Henry F. Leonnig* for appellants.

*Harry L. Durity, Associate County Attorney for Prince George's County,* with whom were *Joseph S. Casula, County Attorney for Prince George's County,* and *Michael E. Connaughton, Associate County Attorney for Prince George's County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

This matter is before us on the appeal of Eugene Beane, Sr., et ux., plaintiffs below, from an Order of the Circuit Court for Prince George's County (Judge Robert B. Mathias) granting them limited injunctive relief against Prince George's County following a hearing which was mandated by the Court of Appeals in *Beane, et ux. v. McMullen, et al.,* 265 Md. 585, 291 A. 2d 37 (1972). A cross appeal filed by Prince George's County, co-defendant below, from that Order was dismissed by this Court as not timely filed under Rule 1035 b(3).

The subject matter of this appeal, as it was in part of the prior case, is the improvement of a portion of Sansbury

Road in Prince George's County by the Prince George's County Department of Public Works and the subsequent installation of catch basins and a 24 inch corrugated metal drainage pipe extending from the intersection of Sansbury Road and Ritchie-Marlboro Road in a westerly direction approximately 450 feet along the south side of Ritchie-Marlboro Road past four residences and onto the property of the Beanes, where it terminated in an outfall 40 feet inside their property. From there the water drained into the roadbed of the abandoned Forestville-Oak Grove Public Road roughly separating the properties of the Beanes and their neighbors, the McMullens, until it passed through a pipe under Fernwood Road which forms the western boundary of the Beane property.[1]

The trial court on remand conducted a prehearing conference and thereafter heard testimony of seven witnesses and received in excess of thirty exhibits. The testimony was transcribed and the court subsequently filed a comprehensive 46-page Opinion and Order. However, the injunctive relief provided in the Order was substantially the same as that from which the original appeal was taken, namely, that the 40 foot portion of the offending pipe be removed from the Beane property so that the outfall would be at the common boundary line of the Beanes and McMullens. For the reasons set forth below, it is our determination that the appellants are entitled to something more at the hands of the County and that the case for equitable relief must again be remanded for determination of a solution that will be fair to both parties. *Cf. Turner v. Washington Suburban Sanitary Commission*, 221 Md. 494, 158 A. 2d 125 (1959).

The perimeter of our inquiry into the merits of the present appeal was drawn by the Court of Appeals in *Beane*. There the Beanes initially sued their neighbors, the McMullens, for alleged invasion of privacy, unlawful interference with the plaintiffs' business and slander of title. The Beanes later

---

1. Attached to this Opinion is a copy of Plaintiffs' Exhibit No. 13, on remand, which although roughly sketched, nevertheless graphically presents the areas, properties, and installations involved.

joined the Board of County Commissioners of Prince George's County as an additional party defendant after the McMullens filed a counterclaim alleging water damage to their property caused by actions of the Beanes. The latter also filed a counterclaim against the McMullens and the County Commissioners, alleging that the Commissioners and their agents, servants and employees with the help and assistance of the McMullens did "unlawfully, willfully and wrongfully and without just excuse collect various surface waters" which did not naturally flow onto and upon the Beane property into a man-made drainage ditch and pipe, casting the water upon the Beane land, causing great damage and loss of use of the Beane property. In addition to damages, the Beanes sought an injunction against the County Commissioners prohibiting the County "from further allowing unnatural surface water to flow on the lands of the plaintiffs." They elected a jury trial of their counterclaim. At the conclusion of the testimony the Circuit Court, Mathias, J., directed a verdict in favor of the McMullens on all three counts of the Beanes' declaration and counterclaim against them. The McMullens' counterclaim against the Beanes and that of the Beanes against the County Commissioners were submitted to the jury, which returned a verdict against the McMullens on their counterclaim and in favor of the Beanes against the County Commissioners for $2,000.

What transpired next is recounted by Judge Barnes, writing for the Court of Appeals, p. 598:

> "After the verdict, the lower court considered the matter of injunctive relief in chambers and orally decided initially to deny that relief. Later, the lower court, on its own motion, decided to have a further hearing in regard to injunctive relief because of a lack of a survey and topographical study of the land below the drainage pipe in question. The Beanes objected to this procedure, relying upon the finality of the verdict of the jury on the question of liability of the County and the consequent need for injunctive relief, and further because of the lack of

any motion by any of the parties for the taking of additional testimony on the merits.

"At the further hearing a plat prepared for the Washington Suburban Sanitary Commission by an unidentified firm was offered in evidence by the County Commissioners; and its admission into evidence was strenuously objected to by counsel for the Beanes. It was, however, received into evidence and the lower court *construed it to contain facts contrary to the facts upon which the jury based its verdict.* The lower court declined to grant the full injunctive relief prayed for by the Beanes, but did require the County Commissioners to remove so much of the offending pipe as was on the Beane property. The Beanes filed timely appeals from all adverse rulings. No cross-appeal was filed by the County Commissioners." (Emphasis added).

The Court of Appeals affirmed the actions of the trial court except with respect to the sufficiency of the injunctive relief. As to this, it held that the lower court, contrary to a contention by the Beanes, had not abused its discretion in taking additional testimony in regard to the practical manner in which injunctive relief might be fashioned. It pointed out, however, that the court in fashioning injunctive relief was not at liberty to disregard, as it had, "the premises already established by the jury verdict and judgment," for Rule BF 43, entitled "Equitable Principles Applicable to Claim for Injunction,"

"does not mean that in considering injunctive relief ancillary to the action at law, the trial court is to proceed as if the granting of injunctive relief were a matter *de novo* in equity with the right to the trial judge to disregard or reach conclusions contrary to the factual matters already determined by the jury. *In short, the jury's factual findings — either upon a special verdict or inherent in a general verdict — are conclusive in regard to those facts as if the trial court sitting as a trier of fact*

*had so found.* If it be concluded that the jury had no substantial evidence upon which to reach its verdict, the remedy is by the granting of a judgment *n.o.v.* If there were other deficiencies in the verdict, a new trial could be granted. In the present case the trial court properly we think, declined to grant the County's motion for a judgment *n.o.v.*, concluding that there was legally sufficient evidence to support the verdict. The County made no motion for the granting of a new trial and no new trial was granted. Thus the verdict and judgment became final and no appeal from the judgment was taken to this Court." (Emphasis added.) (p. 613).

"Accepting the facts implicit in the jury's verdict as established in the case," the Court continued, "the Beanes would be normally entitled to an injunction against the County to alleviate the increased flow of surface water upon their land resulting from the canalization of surface water by the County's installation of the catch basins and pipe." [2] The trial court, however, in the Court's view, while requiring the County to remove so much of the offending pipe as was on the Beanes' property, failed in its order "to grant the Beanes any substantial relief from the canalization of the surface water and its increased flow over and above the natural flow of such water prior to the County installations." Moreover, although, as argued by the County, the equitable doctrine of comparative hardship may be applicable in the consideration of the grant or denial of injunctive relief in actions at law, "no specific consideration was given by the trial court" to any such principle. Consequently, "in view of all the circumstances," the Court reversed the Order granting the injunction and remanded

---

**2.** The Court here cited *Grant v. Katson*, 261 Md. 112, 274 A. 2d 88 (1971), where the findings of fact inherent in the jury's general verdict returned at the close of plaintiffs' action for continuing trespass arising from alleged excessive concentration and diversion of surface waters, and the conclusion as to liability, were deemed by the court to "constitute the law of the case" in a determination of whether ancillary injunctive relief was appropriate. The Court in *Grant* noted, to be sure, that the facts there were "unchallenged and rather simple."

the case to the lower court specifically "for the purpose of taking additional testimony if required, in order to fashion an order, in proper form, to give more complete relief to the Beanes, in addition to the removal of the 40 feet of pipe from their land, from the abnormal and unlawful flow of water on the Beanc property resulting from the County installation, unless some doctrine of equity precludes injunctive relief in which event the Beanes would be enabled to proceed, without prejudice, to recover recurring damages resulting from such installation subsequent to July 21, 1971, when the $2,000.00 judgment should have become final."

Upon remand, on January 3, 1973, Judge Mathias conducted a further hearing for the purpose of taking additional testimony on the issue of what "more complete" injunctive relief, if any, the Beanes were entitled to pursuant to the mandate of the Court of Appeals. On May 29, 1973 he filed the detailed Opinion and Order of Court which again required the County to remove so much of the offending pipe as extended onto the Beane property and to regrade the area around the mouth of the pipe to permit the water to flow down the old roadbed; and in addition to maintain inspection of the effluent from the pipe and to abate any pollution manifesting itself therein, evidence of which had been presented by the appellants at the January hearing. He again refused, however, to grant the full injunctive relief prayed for by the appellants, namely either to 1) remove the pipe and catch basins and restore the drainage to its status prior to the installations, or 2) carry the present pipe forward through the Beane property and have the water deposited in a suitable place.

In denying the appellants further injunctive relief the trial court was cognizant of the following observation of the Court of Appeals in *Beane* (p. 617):

"It is true that the removal of the 40 feet of pipe on the Beane land — placed there without the consent of the Beanes and obviously a continuing trespass — does abate a continuing trespass of that 40 feet of pipe; but it does nothing to abate or relieve the abnormal and unlawful flow of water on

the property of the Beanes. Indeed, as a result of the order, 40 feet more of the Beane land will be subject to the abnormal and unlawful flow of water! "

The trial court was aware, more particularly, of the Court's determination that inherent or implicit in the jury's general verdict and therefore "established in the case" were the factual findings that prior to the improvement of Sansbury Road by the County and the subsequent installation of the pipe from that road to the Beane property

1) there had been no problem of water continually standing in the old roadbed;

2) the only land draining into the old roadbed had been that of the McMullens and perhaps the land of the Mabes, next to the McMullen land; and

3) there had been no pre-existing sloping ditch from Sansbury Road to the Beane property which the County had merely utilized in installing the pipe.

Notwithstanding the Court of Appeals' holding that these facts and the ultimate finding of an undue channelization of surface water by the County with the attendant damaging effects on the Beane property had been determined by the jury verdict, Judge Mathias in denying further injunctive relief specifically found the following, based upon his examination of "the total evidence, including the exhibits and testimony presented during the July 1971, August 1971 and January 1973 hearings":

1) "that there has been no evidence introduced to show that the amount of water now standing in the old roadbed has been increased over that which always stood therein prior to the Sansbury Road improvement; "

2) "that the present Sansbury Road watershed, or that area of land presently draining into the Ritchie-Marlboro Road drainage system pipe

which pipe extends onto the plaintiff Beane's land by forty (40) feet, has not been changed from what it was prior to the Sansbury Road improvement; " and

3) "that the natural drainage waters from Sansbury Road and the surrounding watershed always drained into the old roadbed running behind plaintiff Beane's property and then into a drainage pipe located under Fernwood Drive, and that prior to the installation by the County of the Ritchie-Marlboro Road drainage pipe, the waters from Sansbury Road ran past the four Ritchie-Marlboro Road houses in a then-existing, now-covered drainage ditch having a 3' wide macadam surfaced bottom gutter and four 12" C.M.P. located underneath the entrance driveways of all four houses."

It is clear that by these findings the trial court placed itself squarely at variance with what the Court of Appeals had ruled to be the facts established in the case by the jury's verdict. Indeed he did not hesitate to say so, voicing the belief that with respect to one of those issues of fact the Court of Appeals was proceeding upon an incomplete record supplied to it by the appellants' counsel[3] and that with respect to another, the Court's "conclusion is inconsistent with the evidence." In sum, the trial court stated, the "findings of fact by the Court do not necessarily follow from the jury's verdict awarding $2,000.00 to the plaintiff Beane," an award that is "more reasonably" found to be "one of nominal damages awarded the Beanes for a technical trespass q.c.f. resulting from an increased flow of water upon the plaintiff's land." Applying equitable principles he

---

3. The omission was from the testimony of Charles Bauman referred to by Judge Barnes in *Beane* as supporting the Beanes' right to an injunction. The record extract of both the appellants and the County included portions of Bauman's testimony but omitted a question and answer which the lower court felt "would tend to reduce considerably the weight" of the rest of Bauman's testimony. It was, of course, the County's duty, and not the appellants', to supply extracts of any portions of the testimony favorable to it.

found that the County had made a reasonable use of the surface waters under its control and that alternatively, the facts of the case brought it within the ambit of the equitable doctrine of comparative hardship. Our inquiry must be whether the facts do indeed support the application of either of those principles and hence whether the court was clearly erroneous in shaping his injunction in accordance therewith.

We point out initially that, contrary to the lower court's reading of the opinion, the Court of Appeals in *Beane* made no "findings of fact" as that was not its function, but by its holding merely affirmed the general principle that every material issue of fact submitted to the consideration of the jury is determined by a general verdict in favor of the prevailing party. 89 C.J.S. 485. Manifestly the material issues in the Beanes' dispute with the County were whether there was a pre-existing sloping ditch from Sansbury Road to the Beane property, whether the only land draining into the old roadbed prior to the County's installations was that of the McMullens and the latters' immediate neighbor (the Mabes), and whether those installations caused an abnormal flow of water into the old roadbed and contributed to a condition of continuous standing water there. The Court of Appeals considered these issues, as to which "the jury believed the Beane testimony," resolved by the jury verdict in favor of the Beanes and the corresponding facts to be established in the case. This determination is, we find, conclusive of the question of whether the doctrine of reasonableness of use of surface waters supports the trial court's refusal to grant the Beanes "more complete" injunctive relief.

The doctrine of reasonable use was developed in equity to mitigate the rigors of the civil law rule, adopted early in Maryland, pertaining to the control of the natural flow of surface waters. That rule was stated by Judge (later Chief Judge) Prescott in *Sainato v. Potter*, 222 Md. 263, 159 A. 2d 632 (1960), as follows:

> "... the owner of higher land is entitled to have surface water flow naturally onto the lower land of an adjoining landowner. [citing cases.] And the

lower landowner cannot obstruct the running of natural surface waters onto his land from that of the higher owner. [citing cases.] This rule is, however, subject to the important limitation that the higher landowner cannot artificially collect surface water and discharge it at one point over the lower land, so as to injure it, nor can he precipitate it in greatly increased or unnatural quantities upon his neighbor below to the substantial injury of the latter." [citing cases.]

And in *Biberman v. Funkhouser,* 190 Md. 424, 58 A. 2d 668 (1947), it was said at p. 429:

"This rule of the civil law [which accords to the owner of the upper land a right to the uninterrupted flowage of surface waters] is subject to the qualification that the upper owner has no right to increase materially the quantity or volume of water discharged on the lower land owner . . . [nor] to discharge water into an artificial channel or in a different manner than the usual and ordinary course of drainage, or put upon the lower land water which would not have flowed there if the natural drainage conditions had not been disturbed. *Neubauer v. Overlea Realty Co.,* 142 Md. 87, 99, 120 A. 69." [4]

But in *Sainato, supra,* the Court described the tempering role of equity as applied to the rule:

"In cases where a strict application of the general rule would result in hardship upon either the higher or lower landowner, Courts have recognized what is termed a 'reasonableness of use' rule. An application of this rule creates no precedent, nor

---

4. That the rule is likewise applicable where a municipality or county government occupies the position of upper owner, *see Baltimore County v. Hunter,* 207 Md. 171, 113 A. 2d 910 (1955); *Kennedy-Chamberlin Co. v. Snure,* 212 Md. 369, 129 A. 2d 142 (1957); as well as *Baer et ux. v. Board of County Commissioners, infra;* see Note, "Maryland Surface Waters — a Critical Analysis," 18 Md. L. Rev. 61.

does it change the adopted rule of law. It is based upon the facts of a particular case, and provides mitigation for the harsh application of the general rule. This Court has recognized the rule on several occasions." [citing cases.] 222 Md. at 267-68.

And in *Kidwell v. Bayshore Dev. Corp.*, 232 Md. 577, 194 A. 2d 809 (1963), the Court said of this rule:

"It depends upon the facts of each particular case, is peculiarly appropriate for an equity court to follow, and, in cases where undue hardship will ensue to one or the other of property owners by a rigid application of the civil-law rule, it has the advantage of flexibility, whereby the rights of the respective owners may be equitably determined by an assessment of all the relevant factors relating to the disposition of surface waters. * * *." 232 Md. at 583-584.

Yet while the doctrine is particularly appropriate for an equity court to follow, based as it is on the facts of a particular case, clearly it is subordinate to the principle, stated by Judge Barnes and quoted above, that the granting of injunctive relief is not to be regarded as

". . . a matter *de novo* in equity with the right to the trial judge to disregard or reach conclusions contrary to the factual matters already determined by the jury. In short, the jury's factual findings — either upon a special verdict or inherent in a general verdict — are conclusive in regard to those facts as if the trial court sitting as a trier of fact had so found."

Here, as interpreted by the Court of Appeals, the jury's verdict represented a finding that the County had "artificially collect[ed] surface water and discharge[d] it at one point over the lower land so as to injure it," and that this channeling of the water was "undue" and "abnormal and unlawful." In *Baer et ux. v. Board of County Commissioners*, 255 Md. 163, 257 A. 2d 201 (1969), the Court of Appeals had

before it similar evidence of an artificial concentration of surface water and its discharge upon the property of a lower landowner caused by the installation of drainage pipes by the Board of County Commissioners of Washington County. In discussing the concept of reasonable use the Court noted:

> "While our later cases emphasize that an artificial increase or concentration of surface water *will be deemed unreasonable if damage results,* 21 Md. L. Rev. 88 (1961), this seems to have been recognized as a ground for relief even before reasonableness was a test. *Lion v. Baltimore City Pass. Ry. Co.,* 90 Md. 266, 44 A. 1045 (1890)." (Emphasis added.)

To hold, as the lower court did, that the County's canalization of water was a reasonable use of surface waters was to "disregard or reach conclusions contrary to the factual matters already determined by the jury," something a court of equity may not do.

Nor, it may be added, does the evidence adduced at the injunction hearing on January 3 dilute the jury's findings. The testimony of two representatives of the Prince George's County Department of Public Works was that, based upon a storm calculated to occur once in ten years, the increase in discharge of water onto the Beane property, measured at the point of termination of the pipe, which had resulted from the resurfacing of Sansbury Road and the installation of the pipe along Ritchie-Marlboro Road was 3.2 cubic feet per second over the prior discharge of 17.4 c.f.s. or an increase of about 18%. To the lower court, as stated in its Opinion, this indicated that "fully 84% of the water now being discharged onto the Beane land from the County pipe was being discharged onto that land long before the County commenced any improvements."

It is plain from the record, however, that the testimony of the officials of the Public Works Department was based on the assumption, which they shared with Judge Mathias, that the waters from the approximately ten acres of land agreed by the parties to be tributary to Sansbury Road had *always*

drained from the Sansbury Road intersection into a ditch
running alongside Ritchie-Marlboro Road and then into the
old roadbed behind the Beane property. That issue, as we
have indicated, was concluded adversely to the County by
the jury's verdict as explicated by the Court of Appeals. For
even assuming with the lower court that prior to the
County's installations a ditch or swale of some sort abutted
Ritchie-Marlboro Road and that some water flowed through
it from Sansbury Road to the Beane property, the direct
import of the jury's verdict — as we interpret it and as the
Court of Appeals interpreted it — is that a change in the
watershed was effected by the County's operations and that
some material part of the acreage draining into the
Sansbury Road intersection has been made artificially to
flow onto the Beane property to its resulting damage.
Furthermore, even the increase in discharge of water of 3.2
cubic feet per second conceded by the County's experts
represents an additional discharge of approximately 24
gallons per second based on a ten year storm. These
elements combined constitute an unreasonable use of the
surface water by the County and, far from precluding more
complete injunctive relief for the appellants, fully support it.

It is likewise soon apparent that this is not a case calling
for the application of the equitable doctrine of comparative
hardship and the right of a court of equity to refuse a
mandatory injunction to an owner whose land has been
encroached on "if the mistake is innocent and the damages
to the offender [by virtue of the injunction] tip the equitable
scales unduly against him because the invasion and the
benefit to the injured owner are slight." *Dundalk Holding
Co. v. Easter,* 215 Md. 549, 137 A. 2d 667 (1958). In
*Fleischmann v. Hearn,* 141 Md. 463, 118 A. 847 (1922), the
Court of Appeals, quoting 19 Corpus Juris, page 997,
explained the doctrine as follows:

> " 'A mandatory injunction will of course be
> denied where damages will constitute an adequate
> remedy; where the obstruction does not constitute a
> material interference with the rights of the owner
> of the easement; or where the damages sustained

are merely nominal; . . .' And further: 'The Court should consider the relative expense and inconvenience which it would occasion to the parties; in other words, 'the balance of injury' ; and should refuse to grant the injunction wherever it would operate inequitably and oppressively. While there is some authority to the contrary, the better view is that a mandatory injunction will be denied and plaintiff left to his remedy at law, where the expense of removing the obstruction is greatly disproportionate to the benefit to be derived by the owner of the easement, and where in addition thereto a merely technical right has been violated resulting in no actual damage; where the removal would bring no actual advantage to the owner of the easement.' And to the same effect are the cases in this Court of *Maryland Hotel Co. v. Engraving Co.*, 92 Md. 725; *Bernei v. Sappington*, 102 Md. 185; *Greenbaum v. Harrison*, 132 Md. 34.

At the hearing on the injunction the County presented the results of studies involving six possible solutions for removing or alleviating the flow of water onto the Beane property created by the catch basins and pipe. The cost of the projects to the County, as supported by detailed estimates introduced in evidence, was estimated to range from $39,829 down to $10,870. The costliest solution involved, essentially, an extension of the existing pipe in the form of a 24" concrete pipe and manholes through the Beane property along the old roadbed, a distance of approximately 800 feet, to an outfall on the other side of Fernwood Road. A concrete ditch instead of the pipe along the same route would cost approximately $24,164. Two plans entailing the diversion of the flow of water across Ritchie-Marlboro Road and thence either by pipe or ditch along the road past the Beane property were discounted by the County as either not appreciably less costly or entailing considerable new right-of-way acquisition. A fifth possibility, costing some $10,870, involved a storm water detention system which would divert the water from the end of the existing pipe into

a to-be-constructed detention basin nearby from which the flow of water into the old roadbed, while not ultimately reduced, would be controlled or its "peak flow" reduced by smaller outflow pipes. The final possibility, removal of the pipe all the way to Sansbury Road and "restoration of a side ditch condition as was originally existing," including "reconstruction of the driveways and some certain pipe under the driveways," was estimated to cost between $11,000 and $12,000.

Called by the appellants as a witness, George C. Martin, Chief of the Bureau of Engineering of the Public Works Department, stated that the County had made no estimate regarding simple removal of the pipe footage back to Sansbury (without any of the above "reconstruction" work), but conceded that, based on an estimate he had made in his deposition, the cost might be between $2 and $3 a foot or in the neighborhood of $1,000.

Judge Mathias observed in his Opinion that the benefit to the appellant from the removal of the flow of water onto his property "by his own admission would be only $10,000,[5] and that only after he completely fills in the natural drainage . . . ." He concluded that "while there is an indication of some additional water flowing through the Beane property the burden on the servient property is not so burdensome as to require or justify the County in spending $30,820 to construct 763 feet of pipe so that the Beane property, after it is completely filled, might be worth [an additional] $10,000." Convinced as he was "that the natural surface water drainage from Sansbury Road along the south side of Ritchie-Marlboro Road down through the old roadbed across the Beane property through Fernwood pipe [had] existed years before any improvements were made by the County," the judge gave scant consideration to the alternative solutions considered by the County, including that of removing the pipe and restoring the pre-existing conditions along the Ritchie-Marlboro Road.

We do not agree that the present burden on the Beane

---

5. This was based on Eugene Beane's testimony at the original trial.

property, as determined by the jury verdict, "is not so burdensome" as to justify more complete injunctive relief than the trial court, now for the second time, has granted the appellants. We perceive no way in which the terms of the comparative hardship doctrine — that there be no "material interference" with the rights of the offended party, no "actual damage" but only the violation of a "technical right," at all events a great disproportion between the cost of removing the burden by any reasonable means and the benefit conferred thereby — can be squared with the facts of this case as determined by the jury verdict. The installation of the storm pipe by the County caused, not a "technical trespass q.c.f. resulting from an increased flow of water upon the plaintiff's land" but the "abnormal and unlawful" channeling of the surface water from up to ten acres of land which had not previously drained onto the appellants' property. We cannot agree that of the remedial alternatives proposed by the County none is practicable and at the same time reasonable in cost in proportion to the continuing damage suffered by the appellants as a result of this unnatural discharge of water. We conclude that the doctrine of comparative hardship is inapplicable to the facts of this case. The appellants, therefore, are entitled to more complete relief than was granted them by the Order of Injunction of May 25, 1973.

Accordingly, we conclude that the Order must be reversed and the cause remanded for further proceedings to the end that an appropriate Order may be entered adopting one of the solutions presented or some similar solution that will be fair to both parties. See, O. F. C. Corporation v. Turner, 228 Md. 105, 179 A. 2d 366 (1961). With respect to the further proceedings, we consider it appropriate to note that the record on remand contains (as Plaintiffs' Exhibit No. 8) a Memorandum dated January 8, 1965 to the head of the County Department of Public Works from an assistant concerning an investigation of a "drainage problem at the intersection of Sansbury Road and Ritchie-Marlboro Road near the property of Mrs. Alta Beall." It recommended the original installation of the subject drainage system involving

some 450 feet of 24 inch corrugated metal pipe and two inlets at a cost of $2,230. The memorandum then states:

> "We feel that it is necessary to install this length of pipe because other properties are involved and it is not practical to just carry the 24 inch pipe past Mrs. Beall's property and stop.
>
> *"The Washington Suburban Sanitary Commission would not approve this system if we were to submit it to them."* (Emphasis added.)

The recommendation was adopted, as shown by the following handwritten notation thereon: "O.K. Construct as planned. Call it temporary."

It now appears, therefore, that the system in question was constructed without the knowledge of the Sanitary Commission and in a manner which would not be approved by the Commission pursuant to its authority under Section 3-11 of the Washington Suburban Sanitary District Code. The trial court in connection with further proceedings should require a full exploration of this aspect of the case with appropriate participation by the Sanitary Commission.

The remaining contentions of the appellants pertain to alleged prejudice on the part of the trial court and claims for counsel fees, both below and on this appeal, on the ground that the County's "further litigation of the request for injunctive relief was without substantial justification and not in good faith."

We find unsupported appellants' claim that "demonstrated prejudice" on the part of Judge Mathias precludes his further consideration of the case. We note from an examination of the entire record that the trial and subsequent proceedings, including the proceedings on remand, were truly adversary. The trial court was firm and decisive but not prejudiced and we reject the contention that he should be disqualified from further consideration of the case.

Somewhat novel is the suggestion with respect to counsel fees, that appellants' attorney is entitled to an award in this Court pursuant to the provisions of Rule 604 b of the

Maryland Rules of Procedure. If appellants had any basis for such a claim, it was not presented to the trial court and is not cognizable here. Maryland Rule 1085. As for the suggestion that we allow counsel fees on this appeal, no supporting authority is cited. In Maryland, except in special circumstances, not here present, the practice has been to require successful parties to pay their own counsel fees. *Erie Insurance v. Lane*, 246 Md. 55, 63, 227 A. 2d 231 (1966). As stated by Judge Finan in *Marney v. Stack*, 261 Md. 78, 81, 273 A. 2d 426 (1971), attorney's fees on appeal are not allowable as costs unless authorized by a statute or where special circumstances exist which are not present in the case at bar. The charge that the County had no justification for "relitigating" the issue of the scope of the drainage area and related matters is without foundation.

> *Order reversed and case remanded for further proceedings not inconsistent with this opinion; costs to be paid by appellee.*

Drawing (Not to scale) of Area involved in the Law Suit.

SANSBURY Rd.

E.M. Beall
#1657
R.M. Rd
Red

A.L. Beall
#1655
R.M. Rd
Red
yellow

R.C. Mabe
#1653
R.M. Rd
yellow
Red

S. McMullen
#1651
R.M. Rd
Red

C. Beall
1650
R.M. Rd

Blue

Beane
#1601
R.M. Rd.
Red

Ritchie Marlboro Rd.

Red: ▨
septic field

Yellow: ▨
sink and washer drain

Blue: ▨
storm drain (under ground) flow.

Fernwood Trailer Park